# GEORGE FAIR *vs*. HARTFORD RUBBER WORKS COMPANY.

First Judicial District, Hartford, May Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A one-eyed employee who sustains a personal injury arising out of and in the course of his employment, which destroys the sight of this eye whereby he is totally and permanently incapacitated is entitled, under the Workmen's Compensation Act as it stood in 1918, to compensation for total incapacity (§ 5351) rather than the lesser sum specifically provided in § 5352 for the loss of one eye.

A voluntary agreement approved by the Compensation Commissioner in such a case, provided for payments to the injured employee upon the theory that he was entitled only to compensation for the loss of an eye, no mention being made of the fact—which was unknown by the commissioner and supposed by the parties to be immaterial—that he had previously lost the sight of his other eye. *Held* that the commissioner had the same revisionary power over his original award that a court of equity in this State had over its

decrees, and because of his mistake of fact, might reopen his award three months later and allow the plaintiff the rate of compensation prescribed in § 5351 for total and permanent incapacity.

Argued May 12th—decided August 5th, 1920.

RESERVATION for the advice of this court by the Superior Court in Hartford County, *Maltbie, J.,* upon a *pro forma* denial by the Compensation Commissioner of the first district of the plaintiff's application to reopen his claim for compensation which had theretofore been settled by voluntary agreement of the parties with the approval of the aforesaid commissioner. *Judgment advised for the plaintiff.*

It appears from the finding of the commissioner that on the 16th day of May, 1919, he approved a voluntary agreement of settlement between the plaintiff and the defendant reciting that the average weekly wage of the plaintiff, computed in accordance with the statute, was $16.84, and that on or about January 1st, 1919, the plaintiff sustained an injury arising out of and in the course of his employment, said injury being described in said agreement as follows: "Hit in right eye with piece of rubber which reduced the sight of right eye to less than one tenth of normal vision"; and that the defendant contracted to pay the sum of $8.42 for the period of 104 weeks from January 26th, 1919. Some three months after the approval of this voluntary settlement, the plaintiff applied to the commissioner to have the original award set aside, and for an award as for total and permanent incapacity substituted therefor. On the evidence introduced at the hearing it appeared that the plaintiff, prior to the injury recited in the contract of voluntary settlement, had totally lost the sight of his left eye, and that as a result of the injury to his right eye in combination with his antecedent infirmity, plaintiff was totally and

permanently blind. No evidence was introduced at the hearing to show that the incapacity of the plaintiff since the voluntary agreement of settlement was entered into, had increased, decreased or ceased, or that any changed conditions of fact had arisen with respect thereto.

The questions reserved for our decision are whether the commissioner, under the conditions stated, has power to reopen the claim, and whether the plaintiff is entitled to compensation for total incapacity under § 5351 of the General Statutes, or for partial incapacity under subsection G of § 5352.

*Albion B. Wilson,* for the plaintiff.

*Charles Welles Gross,* for the defendant.

BEACH, J. We take up first the question of the substantive rights of the plaintiff under the Compensation Act as it stood at the time of the injury; and having regard to the general scheme of compensation set forth in §§ 5351 and 5352, we are of opinion that the plaintiff was plainly entitled, under the terms of the statute, to an award for total and permanent incapacity under § 5351; that is to say, to a weekly compensation equal to one half of his average weekly earnings at the time of the injury, for 520 weeks. Section 5351, which carries the subtitle "Compensation for total incapacity," provides for compensation based on one half of the average weekly wage of the claimant at the time of the injury, to be continued not longer than the period of total incapacity and in no event longer than 520 weeks. Then follows a schedule of injuries which are to be considered as causing total incapacity and compensation paid accordingly. These include total and permanent loss of sight in both eyes and other injuries

equally serious. Section 5352 carries the subtitle "Compensation for partial incapacity" and provides that in such case the weekly compensation shall "be equal to one half the difference between his average weekly earnings before the injury and the amount he is able to earn thereafter," to continue during the period of partial incapacity, but not longer than 312 weeks; but for certain enumerated injuries a schedule of specific compensation periods is fixed, graded as to duration according to the severity of the injury, and as to these fixed awards the section provided that they should be "in lieu of all other payments"; and among these specific injuries is included the following: "for the complete and permanent loss of sight in one eye . . . one hundred and four weeks." The question is whether a one-eyed man who suffers an injury, arising out of and in the course of his employment, destroying the sight of his good eye, whereby he is totally and permanently incapacitated, is entitled under the Act as it stood in 1918, to compensation for total incapacity under § 5351, or only to the specific compensation provided in § 5352 for the loss of one eye.

The defendant relies on the phrase "in lieu of all other payments"; and insists that because the injury in question destroyed but one eye, § 5352 controls. This we think ignores the general scheme of the Act which deals with total incapacity under § 5351, and with partial incapacity under § 5352. The latter section assumes that the injured employee is still able to earn something after an injury, and the compensation which it awards is based on one half of the difference between the earning capacity before and after the injury. Such a measure of compensation is not applicable to an injury which leaves the employee totally incapacitated from earning anything, and all cases of total incapacity, whether temporary or permanent,

are manifestly to be compensated in accordance with § 5351.

It is unnecessary to pursue this question any further. It was practically settled in *Saddlemire* v. *American Bridge Co.*, 94 Conn. 618, 110 Atl. 63, 68, where we said (p. 630): "Where the loss of a leg in fact results in partial incapacity, the provision for compensation for the loss of a leg applies. Where the loss of a leg in fact results in total incapacity, the provision for the loss of a leg does not apply." It is of no consequence that the total incapacity of this plaintiff is in part due to the fact that he had already lost one eye before suffering the injury in question; the right to compensation depends in each case on the extent to which the plaintiff is in fact incapacitated by the injury. *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 97 Atl. 1020.

The remaining question is whether the commissioner had power under the conditions of fact stated in his finding to reopen his original award.

This depends primarily on the proper construction of § 5355, which provides that any award, whether based on voluntary agreement or not, shall be subject to modification upon the request of either party, "whenever it shall appear to the compensation commissioner that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence, on account of which compensation is paid, has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement or award in order properly to carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the State has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon,

during the whole compensation period applicable to the injury in question."

Incidentally § 5361 should also be taken into the account. It provides for awards based on voluntary agreements and, among other things, that "if said commissioner shall find such agreement to conform to the provisions of this chapter in every regard he shall so approve it."

This agreement did not conform to the provisions of the Act in the respect already pointed out, and the commissioner had no right to approve it, and could not have approved it had he been aware of the fact that the injury in question resulted in total blindness and not merely in the loss of the sight of the right eye. It appears from the finding, and is agreed by the parties, that the commissioner was ignorant of that fact and did not know that the plaintiff was a one-eyed man at the time of his injury, until the hearing upon the application to reopen the original award. It should be said in this connection that there was no attempt on anybody's part to conceal that fact, but that it was not mentioned in the voluntary agreement because it was then believed to be immaterial.

The defendant points out that there has been no change in conditions of incapacity or fact since the original award, and that the plaintiff omitted to bring the fact of his total incapacity to the attention of the commissioner when the voluntary settlement was submitted for approval. On the other hand, the statute gives the commissioner the same revisionary power over his award that any court of equity in this State has over its decrees.

Courts of equity have inherent power to reopen a decree based on a mistake of fact. They do not ordinarily do so at the instance of a private suitor who might, in the exercise of reasonable diligence, have cor-

rectly informed the court, because the rule of public policy expressed by the maxim *interest reipublicæ ut sit finis litium* requires that, subject to well recognized exceptions, judgments should be final. The awards of compensation commissioners are not subject to this rule. The statute expressly provides that they shall be open to revision until completely performed; and it may be added that independently of that provision they resemble interlocutory decrees for the future payment of alimony, rather than final judgments. And a plaintiff in compensation proceedings is not required by any rules of pleading or procedure to make a formal and complete statement of his claim. Moreover, the rule which denies a rehearing to a non-diligent litigant is not applied in cases where the State is interested for reasons of public policy. As pointed out in *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 93 Atl. 245, the Compensation Act expresses a revolutionary change in our public policy in imposing on the employer his share of a common loss in a common industry (p. 146), and the State is interested in seeing that the employer bears his statutory share of the burden, lest the injured employee should become a public charge.

Finally, we think that these considerations apply with great force to cases of voluntary agreements for compensation; not only because the jurisdiction of the commissioner to approve such agreements is limited, but because § 5361, by requiring that the commissioner shall see that the statutory rights of the contracting employee are protected, recognizes the fact that in making such contracts the employee does not stand on an equal footing with his employer. As this case illustrates, the employee, almost necessarily, takes his legal advice in such cases from his employer.

For these reasons we hold that the commissioner has power to reopen his award, and that he is not precluded

Windsor *v.* Whitney.

by any rule of public policy from reopening it, because
the plaintiff might, in the exercise of that degree of
diligence which is ordinarily required of litigants, have
brought the fact of his total incapacity to the attention
of the commissioner before the original award was
made.    The rule of public policy applicable to such
cases as this is "to carry out the spirit of this chapter."

The Superior Court is advised that the commissioner
has power to reopen his award, and that the plaintiff
is entitled to compensation for total and permanent
incapacity under § 5351; and is advised to render
judgment accordingly.

In this opinion the other judges concurred.