CALUMET FOUNDRY AND MACHINE COMPANY *v.* MROZ.

[No. 11,705.   Filed December 21, 1923.]

1.  APPEAL.—*Former Appeal.—Obiter Statements in Opinion.*— Statements in the opinion on a former appeal on an issue not then presented are *obiter* and will not control on a second appeal.   p. 620.

2.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Construction.*—The Workmen's Compensation Act must be liberally construed in favor of the employe.   p. 621.

3.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Loss of Eye Resulting in Total Blindness.*—The loss of an eye by an employe who had lost the other eye in a different employment, thus resulting in his total disability to perform labor, is not compensable under §31, clause (d) of the Workmen's Compensation Act, (Acts 1915, p. 392, as amended Acts 1919 p. 162, §8020q1 Burns' Supp. 1921), but under §33, which provides that if an employe had previously sustained a permanent injury in another employment, he shall receive compensation for the subsequent injury "in the same amount as if the previous injury had not occurred."   p. 621.

From the Industrial Board of Indiana.

Proceedings under the Workmen's Compensation Act by John Mroz against the Calumet Foundry and Machine Company. From an award of the Industrial Board in favor of claimant, defendant appeals. *Reversed.*

*Turner, Adams, Merrell & Locke* and *Paul E. Beam,* for appellant.

*Tinkham, Tinkham & Murray,* for appellee.

REMY, C. J.—This is an appeal from an award by the Industrial Board. So much of the finding of the board as is essential to a determination of the question presented is, in substance, as follows: On January 4, 1921, appellee received an injury arising out of and in the course of his employment by appellant, which resulted in the permanent total loss of the sight of his right eye; that about seventeen years before, and when appellee "was not in the employment" of appellant, he received an injury which resulted in the permanent and complete loss of the vision of his left eye; and that, as the combined result of the two injuries, appellee is totally blind, and is permanently and wholly disabled for the performance of manual labor. On this finding, the board by a majority of its members awarded compensation at the rate of $13.20 per week for a period of 500 weeks. That the award is contrary to law, is the error assigned.

This is the second appeal of this case. *Calumet Foundry, etc., Co.* v. *Mroz* (1922), 79 Ind. App. 305, 137 N. E. 627. On the former appeal, an award

1.  of compensation for three hundred fifty weeks was reversed, as being contrary to law. The question presented by this appeal was not in issue. It follows that any statements embraced in the opinion rendered by this court on the former appeal, which bear

upon the issue now presented, are *obiter*, and are not controlling as the law of the case. *Small* v. *Buchanan* (1905), 165 Ind. 549, 553, 76 N. E. 167; *Board, etc.*, v. *Adler* (1922), 77 Ind. App. 296, 133 N. E. 602.

It is contended by appellant that, on this finding, the award should have been for 150 weeks, and no more.

2, 3. The question for determination is one of statutory construction, requiring a consideration of §§31, 33 and 35 of the Workmen's Compensation Act. Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921, as amended Acts 1919 p. 162. No other sections of the compensation laws are in any way involved. So much of §31 as it is necessary to consider is as follows: "For injuries in the following schedule the employe shall receive, in lieu of all other compensation on account of said injuries, a weekly compensation of fifty-five per cent. of his average weekly wages for the periods stated, for said injuries, respectively to wit: * * * (d) For injuries resulting in permanent total disability five hundred weeks. (e) For the loss of both hands, or both feet, or the sight of both eyes, or any two of such losses in the same accident, five hundred weeks. (f) For the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision with glasses one hundred and fifty weeks. * * * (h) In all other cases of permanent partial impairment, in the discretion of the Industrial Board, not exceeding five hundred weeks."

Sections 33 and 35 are as follows: "33. If an employe has sustained a permanent injury in another employment than that in which he received a subsequent permanent injury by accident, such as specified in section 31, he shall be entitled to compensation for the subsequent injury in the same amount as if the previous injury had not occurred."

"35. If an employe receives a permanent injury such

as specified in Section 31, after having sustained another permanent injury in the same employment he shall be entitled to compensation for both injuries but the total compensation shall be paid by extending the period and not by increasing the amount of weekly compensation.

"When the previous and subsequent permanent injuries result in total permanent disability, compensation shall be payable for permanent total disability, but payments made for the previous injury shall be deducted from the total payment of compensation due."

Under the facts found by the board, appellee suffered no physical injury on January 4, 1921, except the permanent loss of the sight of one eye. It will be observed that the board did not find that the injury for which compensation is asked resulted in total permanent disability. On the contrary, the board specifically found that it was by reason of the combined result of the injury for which compensation is asked and the injury received seventeen years before that appellee was totally disabled. As held by this court in *Stevens* v. *Marion Machine, etc., Co.* (1921), 77 Ind. App. 28, 133 N. E. 23, it is inaccurate to say that the last injury resulted in total blindness. The specific finding of the board that total permanent disability was the combined result of the two injuries would preclude any inference that the last injury caused the total disability. It must be kept in mind that the compensation sought in this case is for the last injury. For the last injury, the injury of January 4, 1921, which resulted in the loss of but one eye, clause (f) of §31 provides compensation for the definite period of 150 weeks. There is no other provision of the compensation act which is applicable. Section 35 does not apply for the reason that there is no finding that appellee lost the sight of both eyes in the same employment. Clause (e) of §31 has no applica-

tion, because the sight of both eyes was not lost in the same accident. Clause (h) does not apply because the permanent loss of the sight of an eye is not a permanent partial impairment *other* than those mentioned in the preceding clauses of §31. It is contended by appellee, however, and the board held, that clause (d) does apply. The theory is that since appellee had previously lost the sight of his left eye, the loss of the right eye on January 4, 1921, resulted in total blindness—total disability within the meaning of clause (d). Under the rule many times laid down by this court, that the compensation act must be given a liberal construction in favor of the employe, there might be merit in this contention, were it not for the fact that §33 prohibits it. Section 33 expressly, and in unmistakable language, provides that if an employe had previously sustained "a permanent injury in another employment than that in which he received a subsequent permanent injury by accident," then and in that event such employe shall receive compensation "for the subsequent injury in the same amount as if the previous injury had not occurred." In the instant case, appellee had lost the sight of his left eye seventeen years before, in another employment, and the compensation to be awarded him must be the same as if the previous injury had not occurred; that is, for 150 weeks as provided by clause (f). The language of §33 is clear and unambiguous, and must be held to mean what it plainly expresses. There is no room for construction. *Cheney* v. *State, ex rel.* (1905), 165 Ind. 121, 74 N. E. 892.

In support of the award, appellee in his brief has cited many compensation cases from the courts of appeal of other states. We have examined all of these cases, and we have carefully examined the compensation acts which were under consideration by the courts in each of the cases cited, and find that in not one of

them did the court have under consideration an act containing a provision corresponding to §33 of the compensation act of this state.

We hold that under the finding of the Industrial Board the award for 500 weeks is contrary to law. *Stevens* v. *Marion Machine, etc., Co., supra.*

The award is reversed, with instructions to enter an award at the rate of $13.20 per week for a period of 150 weeks.

### DISSENTING OPINION.

BATMAN, J.—I cannot concur in the opinion of the majority of the court in this cause, or give assent to the mandate, which will result in reducing appellee's compensatory period from 500 weeks to 150 weeks. This fact would be implied from a mere notation that I dissent, and would suffice ordinarily, but the effect of the majority opinion, as I view it, is fraught with such serious consequences, not only in the instant case, but also in the general administration of the Compensation Act, that I feel warranted in stating at length the reasons for my dissent. All agree that appellee should receive compensation, and that it must be awarded either under subdivision (d), or under subdivision (f), of §31 of the Compensation Act, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921. These subdivisions read as follows: (d) "For injuries resulting in total permanent disability five hundred weeks." (f) "For the permanent loss of sight of an eye or its reduction to one-tenth of normal vision with glasses one hundred and fifty weeks. * * *" The majority opinion seems to proceed upon the theory, that when an injury has been sustained by an employe, which results in an impairment for which a specific period of compensation is provided in said §31, that compensation is limited to such specified period, although such impairment so af-

fects the employe in his then physical condition as to result in total permanent disability, thereby rendering said subdivision (d) wholly inapplicable in any such case. I fail to find in the Compensation Act any reasonable basis for such a theory. On the other hand, the provisions of such act make it clear to me that, when any injury to an employe so affects him in his then physical condition as to result in *total permanent disability*, he falls within the provisions of said section (d), and is entitled to compensation therein provided. If I am correct in this contention, then the award of compensation to appellee should be affirmed under the facts of this case.

I shall now direct my attention to some reasons that have been urged against the view I have expressed, as applied to the instant case. It is stated in an opinion, filed by a learned member of the Industrial Board, explaining his dissent to the award made herein, that— "clause (d) does not apply because the injury of January 4, 1921, *within itself*, did not result in permanent total disability." (My italics.) The majority opinion appears to be in harmony with this view, as it expressly states that "it is inaccurate to say that the last injury resulted in total blindness." These statements bear the implication, that an employe cannot receive compensation under said subdivision (d), unless the injury on which his claim is based would have resulted in total permanent disability, if inflicted on a normal individual; that is, one substantially free from physical imperfections. In my opinion the Compensation Act does not so provide, either expressly or inferentially. It will be observed that the words "within itself" are not found in said subdivision (d), and I find no sufficient reason for reading them into it. But if such words are to be read into said subdivision for any reason, then for a

like reason they must be read into the other subdivisions of §31. It would then follow, that if an employe should lose twenty-five per cent. of the sight of each eye in an employment, for which he should receive compensation, and should thereafter meet with an accident in another employment by which the remaining sight of both eyes should be wholly destroyed, he could not receive compensation for 500 weeks under subdivision (e) as such total loss of sight could not be said to have been the result of the last accident, "within itself," but the combined result of both accidents. And again if an employe should enter the employment of one, after having sustained the loss of a toe by accident in the employment of another, and should thereafter sustain the loss of the remainder of such foot by accident in the latter employment, he could not recover compensation for the full period of 150 weeks for the loss of such foot, as specified in subdivision (a) of said §31, as the loss of the foot would not have been caused by the last accident, "within itself," but by a combination of the two accidents named. Under a fair construction of said subdivision (d), the real question in a given case is, not whether the injury in question *within itself*, resulted in the applicant's total permanent disability, but whether such injury so affected the employe, in his physical condition as it existed just prior thereto, that it resulted in his total permanent disability. If I am mistaken in this, then this court has also been mistaken in many of its previous decisions under the Compensation Act, in which it has refused, in harmony with the general rule in other jurisdictions, to take into account prior physical imperfections, in determining the periods for which compensation should be awarded. In the case of *Indianapolis, etc., Co.* v. *Coleman* (1917), 65 Ind. App. 369, 117 N. E. 502, wherein the court was asked to determine and give effect to the degrees of

disability, arising from the injury involved and a pre-existing disease, respectively, it is said: "Appellant finally contends that the doctrine to be applied under the facts of this case is one of degree: (1) Degree of disability prior to the injury; (2) degree of disability caused entirely by the injury; (3) degree of disability caused entirely by the disease; (4) degree of disability which might have resulted from the disease alone. We cannot concur in this contention. There is no provision for the application of such a doctrine in the Workmen's Compensation Act, *supra,* of this state, and the courts of other jurisdictions have refused to recognize it under similar acts."

This court has also given approval to the following statement: "Yet it is the hazard of the employment acting upon the particular employe in his condition of health and not what that hazard would be if acting upon a healthy employe or upon the average employe. The act makes no distinction between wise or foolish, skilled or inexperienced, *healthy or diseased* employes. All who rightly are describable as employes come within the act." (My italics.) *In Re Bowers et al.* (1917), 65 Ind. App. 128, 116 N. E. 842.

In a more recent case we find the following: "Appellant concedes, and correctly so, that where an employe affected with disease receives a personal injury under such circumstances that the act in question would entitle him to compensation had there been no disease involved, and such disease is materially hastened to a final culmination by the injury, there may be an award, if it is shown that such injury was the result of accident; that in such cases the court will not undertake *to measure the degree of disability due respectively to the disease and to the accident,* but the consequence of the disease will be attributed solely to the accident." (My italics.) *Puritan Bed, etc., Co.* v. *Wolfe* (1918),

68 Ind. App. 330, 120 N. E. 417. See, also, the following to the same general effect: *Retmier* v. *Cruse* (1918), 67 Ind. App. 192, 119 N. E. 32; *Indian Creek Coal, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709; *Robinson* v. *National Life, etc., Ins. Co.* (1921), 76 Ind. App. 161, 129 N. E. 707; *Republic Iron, etc., Co.* v. *Markiowicz* (1921), 75 Ind. App. 57, 129 N. E. 710; *Utilities Coal Co.* v. *Herr* (1921), 76 Ind. App. 312, 132 N. E. 262.

While the Industrial Board expressly found, "that, as the combined result of the two injuries (separated by an intervening period of seventeen years), the plaintiff (appellee) is permanently and totally blind, and is permanently and wholly disabled for the performance of any manual labor," the finding also discloses that the injury which changed his condition from an *earner of substantial wages* to a *state of total permanent disability* was his said last injury. The finding quoted was without the issues, as the Industrial Board was not concerned with the result of a combination of two injuries, separated by such an intervening period, as it had no authority to award compensation for the result of any such combination, but was concerned with the result of his last injury, as affecting the ability which appellee had to work and earn wages in his physical state, as it existed just prior to such injury. The inference that such disability was caused by appellee's said last injury is not precluded by the unauthorized finding, as stated in the majority opinion, but is fully warranted by the facts found, which are amply sustained by the evidence. In determining what effect, if any, a particular injury has upon an employe's ability to work, it is necessary to take into consideration his ability in that regard prior to such injury. In the instant case the evidence discloses that prior to the injury on which appellee bases his claim for compensa-

tion, he had ability to work, notwithstanding he had been blind in one eye for seventeen years. It was a very substantial ability too, for it had enabled him to earn $40 per week as wages, as shown by the stipulation. After the accident in which he lost the sight of his remaining eye, that ability, which had theretofore been his for seventeen years, and by the use of which he had been able to earn substantial wages, was lost, so that thereafter he was in a state of total permanent disability. Now, what was it that caused *that loss,* and resulted in *that* disability? Was it an injury he had sustained seventeen years before? To insist that it was even a contributing cause, in producing the difference in his condition before and after the accident —that is, the difference between a substantial wage-earner and a hopeless nonwage-earner—approaches an absurdity, not to say more. What was it then that produced this great change in appellee's condition before and after his last accident? Clearly there can be but one answer, that can withstand the scrutiny of reason, and that is, the accident in which he lost the sight of his remaining eye, and on which he bases his claim for compensation. In reaching the conclusion announced I am not without authority. In the case of *In re Branconnier* (1916), 223 Mass. 273, 111 N. E. 792, the court had under consideration substantially the same question as here, and said in the course of its opinion: "The employe, when he entered the service of the subscriber, had that degree of capacity which enabled him to do the work for which he was hired. That was his capacity. It was an impaired capacity as compared with the normal capacity of a healthy man in the possession of all his faculties. But nevertheless, it was the employe's capacity. It enabled him to earn the wages which he received. * * * It (the act) fixes no method for dividing the effect of the injury and at-

tributing a part of it to the employment and another part to some pre-existing condition, and it gives no indication that the legislature intended any such division. The total capacity of this employe was not so great as it would have been if he had had two sound eyes. His total capacity was thus only a part of that of the normal man. But that capacity, which was all he had, has been transformed into a total incapacity by reason of the injury. That result has come to him entirely through the injury." To the same effect, substantially, are the following: *Brooks* v. *Peerless Oil Co.* (1920), 146 La. 383, 83 So. 663; *Industrial Com.* v. *State, etc., Fund* (1922), 71 Col. 106, 203 Pac. 215; *Fair* v. *Hartford, etc., Works Co.* (1920), 95 Conn. 350, 111 Atl. 193; *Combination Mfg. Co.* v. *Common Pleas* (1921), 96 N. J. Law 544, 115 Atl. 138; *Heaps* v. *Industrial Com.* (1922), 303 Ill. 443, 135 N. E. 742; *Guderian* v. *Sterling, etc., R. Co.* (1922), 151 La. 59, 91 So. 546; *Schwab* v. *Emporium, etc., Co.* (1915), 153 N. Y. Supp. 234, 167 App. Div. 614; *Kriegbaum* v. *Buffalo Wire, etc., Co.* (1918), 169 N. Y. Supp. 307, 182 App. Div. 448; *Jennings* v. *Mason City, etc., Co.* (1919), 187 Iowa 967, 174 N. W. 785.

I shall now direct my attention to §33 of the Workmen's Compensation Act, Acts 1915 p. 392, *supra*, which the majority opinion asserts is so plain as to leave no room for construction, and cites as controlling in the instant case. As that section is set out in the majority opinion, I do not quote it in full again, but call attention to the fact, that it is expressly limited in its application to cases where "an employe has sustained a permanent injury in *another employment* than that in which he received a subsequent permanent injury by accident." (My italics.) If, as said, it is so plain as to leave no room for construction, it clearly has no application in the instant case, as there is no finding

that the injury which occurred seventeen years ago, and resulted in the loss of the sight of one of appellee's eyes, was *sustained in another employment,* or, in fact, in any employment whatsoever. It follows, therefore, that notwithstanding its asserted clearness, it can only be applied in the instant case if the term "in another employment" be construed as meaning, not what it plainly says, but as meaning "otherwise," so that the first part of said section would read as follows: If an employe has sustained a permanent injury *otherwise* than in the employment in which he received a subsequent permanent injury by accident, etc. Such a forced construction is clearly unwarranted, and directly opposed to the policy of this court, often declared, to so construe the act of which said section is a part, as to accomplish the humane purpose for which it was intended. To me the difference in meaning is so obvious, that I cannot believe that the legislature would have failed to use *some other* expression, if it had intended *some other* meaning, and hence shall not adopt the suggested construction, but accept the phrase "in another employment" as meaning just what it says, although such construction might not affect the ultimate conclusion, as will hereinafter appear.

There is another reason for holding that said §33, Acts 1915 p. 392, *supra,* does not have the effect asserted in the majority opinion. It will be observed that said section was enacted in 1915, and relates to permanent injuries "such as specified in §31." At that time said last-named section only specified periods of compensation for permanent partial disability, leaving §29 (Acts 1915 p. 392, *supra*) to govern cases of total permanent disability, although the word "permanent" is not mentioned therein, since it applies to all cases of "total disability," and provides a maximum period of 500 weeks, which would be awarded, necessarily,

if the disability were both total and permanent. Provisions for total permanent disability, being subdivision (d) of said section, first appeared therein after its amendment in 1919 (Acts 1919 p. 158). Therefore, under the principle involved in the settled rule, that when a statute adopts a part or all of another statute by a specific and descriptive reference thereto, such adoption takes the statute as it exists at the time of the adoption, and does not include subsequent additions or modifications of the statute, unless it does so by express intent, said section cannot be applied where a total permanent disability is involved, as in the instant case. *Calumet, etc., Co.* v. *Mroz* (1922), 79 Ind. App. 305, 137 N. E. 627, and cases there cited.

But assuming that said §33 (Acts 1915 p. 392, *supra*) is applicable to all the provisions of §31 as amended (Acts 1919 p. 158), there is still another reason for holding that it cannot have the effect for which appellant contends, which I shall now consider. In order to correctly understand what the legislature intended by the enactment of said section, it should be read in connection with §§34 and 35 (Acts 1915 p. 392, *supra*). Said §§33 and 35 are quoted in full in the majority opinion, and need not be set out again here. However, I will quote said §34, in order that the three related sections may be read together. Said section is as follows: "Sec. 34. If an employe received an injury for which compensation is payable while he is still receiving or entitled to compensation for a previous injury in the same employment, he shall not at the same time be entitled to compensation for both injuries unless it be for a permanent injury, such as specified in section 31; but he shall be entitled to compensation for that injury and from the time of that injury which will cover the longest period and the largest amount payable under this act."

A careful reading of the three sections mentioned confirms what is at first apparent, viz.: that the sole purpose of the legislature in their enactment was to provide rules for the guidance of the Industrial Board, where an employe had received more than one injury, each by a different accident. The meaning of these sections, when fairly construed, may be illustrated as follows: If an employe, while in one employment, sustains an injury by accident, which results in the permanent and complete loss of his hearing, and is awarded compensation for 100 weeks, under subdivision (g) of said §31, *supra*, and thereafter takes employment with another company, and within six months after the loss of his hearing in his former employment, he sustains a subsequent injury by accident, which results in the loss by amputation of one of his legs above the knee, *no deduction shall be made* in his award of compensation for said subsequent injury, but, under the provisions of said §33, Acts 1915 p. 392, *supra*, he would be entitled to compensation therefor *in the same amount as if the previous injury had not occurred*, that is, for the same period, viz.: 200 weeks, under subdivision (a) of said §31, *supra*. If, however, such employe had not received the permanent injuries mentioned above, or any other injuries specifically mentioned in said §31, *supra*, but had received other injuries by two separate accidents, both while engaged in one of such employments, he would not be entitled to compensation for both of such injuries, but, by reason of the limitations provided in said §34, Acts 1915 p. 392, *supra*, he would only be entitled to compensation for that injury, and from the time of that injury, which would cover the longest period, and the largest amount payable under this act. But if the injuries first mentioned above, being among those specifically mentioned in said §31, *supra*, had not been received in *different employments*,

as stated, but had been received by different accidents in the *same employment,* as provided in said §35, *supra,* such employe would have been entitled to compensation for both injuries, but the total compensation would have been paid by extending the period and not by increasing the amount of weekly compensation. If, however, such injuries had been of such a nature as to result in total permanent disability, he would have been entitled to compensation for permanent total disability, but payments made for the first injury would be deducted from the total compensation due, all as provided in the last-named section. It thus appears that the only circumstance under which a deduction is made in fixing the period for compensation for an injury specified in §31, *supra,* is where total permanent disabilities result from prior and subsequent accidents in the *same employment,* and compensation is paid for the injury sustained in the prior accident. I contend, therefore, that the section under consideration is not one of restriction, but one designed to prevent a reduction in the compensation of an employe, where he receives a second injury in a different employment from that in which he has theretofore sustained a prior injury, thus preserving, among other things, the right of an employe who has sustained a subsequent injury, which has resulted in his total permanent disability, as in the instant case, to compensation for 500 weeks, although he had theretofore received a prior injury in another employment, which resulted in permanent partial disability. If the foregoing fairly illustrates the true meaning of said three sections, as I insist, then it matters not if the words "in another employment," as found in said §33, *supra,* be read as "otherwise," as suggested above, since its effect would not be changed thereby. For the reasons stated, I hold that said §33, *supra,* does not have the effect stated in the majority opinion, which could only

be had by first visualizing appellee with two good eyes just before the last injury, *which was not his true condition,* and then determining his period of compensation, based in part, *on this unreal fact.* I cannot assent to such a procedure, as I find nothing whatever in the Compensation Act to warrant it. In the majority opinion, it is admitted that the theory, "that since appellee had previously lost the sight of his left eye, the loss of the right eye, on January 4, 1921, resulted in total blindness—total disability within the meaning of clause (d)," would have merit, were it not for the fact that §33, *supra,* prohibits it. If, therefore, said section has no application to the facts of this case, because of any one or more of the reasons I have stated, then, under such admission, the award to appellee of 500 weeks ought to be affirmed.

It has been suggested, that if the contention I have been making should prevail, it would result in an employe receiving compensation for 650 weeks, if he should lose the sight of one eye, by separate accidents, in each of two different employments, 150 in the first and 500 in the second. This suggestion loses whatever influence it might seem to have at first, by the fact that, under the Compensation Act as written, an employe who sustains a loss by separation of a leg above the knee joint by accident in one employment, and afterwards loses both hands, both feet or both eyes by accident in another employment, is entitled to receive compensation for 700 weeks, 200 for the first under subdivision (a), and 500 for the second under subdivision (e), of §31, unless limited in the second award by §40 of said act (Acts 1915 p. 392, *supra*). The fact, therefore, that an employe, who has been rendered totally blind by accidents in two separate employments, might receive compensation for more than 500 weeks, unless so limited, is not significant.

Again it is suggested that if the Compensation Act be construed as I contend, in the particulars under consideration, it may result in the discharge of employes with only one eye, unless they exempt themselves from the provisions of such act. If it were possible for this suggestion to have a controlling influence in the determination of the question under consideration, which I do not admit, and it were allowed to have that effect, then, to be consistent, this court must face about, and overrule its numerous decisions hereinbefore cited, in which it has declared that an employe who is suffering from a disease, but still has ability to work, is entitled to compensation for the full period provided in the act, if he sustains an injury by accident, which merely accelerates his existing disease to a stage of disability. I make this statement because it is just as reasonable to assume that employers of labor will inquire into the state of health of their employes, and discharge all afflicted with a disease which may be accelerated by accident in the course of their employment, or require that they exempt themselves from the provisions of the Compensation Act, as it is to assume that they will follow such a course with reference to those who have only one eye. It is also equally as fair to assume that employers will follow such course as to all employes who have any physical defects, which might render them more liable to injury by accident, than those free from such imperfections. Indeed, if such a course is advantageous to employers and they are disposed to follow it, there is much more to be gained in following the same where a disease or deformity exists, than where only one eye is sightless, as there are, evidently, so many more of the former than of the latter. Hence, to be consistent, established precedents must be abandoned, and this court must recognize and

give effect to the doctrine of degrees, rejected in so many jurisdictions, and apportion the results of a given injury between a pre-existing disease or other defect, and the accident involved. If the Compensation Act is to be so administered, it ought to follow specific legislation in that regard, rather than a departure from established precedents, as the result of a belated, forced construction.

Moreover, the suggested discharge of employes, or a required exemption from the provisions of the Compensation Act, will not be avoided under all circumstances by the construction given certain portions thereof in the majority opinion. To illustrate: If an employe has received previous and subsequent permanent injuries in the same employment, such as specified in said §31, *supra,* resulting in total permanent disability, he is entitled to 500 weeks compensation for his subsequent injury under said §35, *supra,* less such period for which he may have been paid compensation for the previous injury, that is to say, where each of such injuries resulted in the loss of the sight of an eye, the employe, having received compensation for 150 weeks for the loss of the sight of the first eye will be entitled to receive compensation for 350 weeks for the loss of the sight of the second eye. A similar result would follow regardless of the nature of the two permanent injuries, if specified in said §31, *supra.* This being true, it is fair to assume that the same selfish propensities attributed to the employers in the suggestion under consideration, which I hesitate to believe exist, would lead them to discharge such of their employes as had sustained one of such injuries in their employment, or require them to exempt themselves from the provisions of the Compensation Act, and thus avoid payment of compensation, following a second injury

resulting in total permanent disability, far in excess of that for which they would be liable if such first injury had been sustained in another employment.

In conclusion I desire to call attention to an inconsistency which, among others, will appear in the administration of the Compensation Act, if the majority opinion stands as written. Under the construction there given, an employe who has lost the sight of one eye in an employment, but who has ability to work and earn substantial wages notwithstanding that fact, will receive only 150 weeks compensation in case he loses · his remaining eye in another employment, and thereby reaches a state of total permanent disability, a period no longer than an employe would receive who loses a foot below the kneejoint, and far less than an employe who loses an arm above the elbow joint, or a leg above the kneejoint, while an employe who has sustained such losses by separate accidents in the same employment would receive compensation for 350 weeks, as a result of the loss of the sight of his remaining eye—a difference of 200 weeks arising from the mere fact that he has changed employment after the loss of the sight of the first eye. I respectfully submit that such an inconsistency was not intended by the legislature, and a fair construction of the act does not require that it should exist. For the reasons stated, I contend that the court was fully justified in the suggestion, contained in its former opinion in this case, that appellee was entitled to compensation for a period of 500 weeks, and that such suggestion, although *obiter dictum,* was not the result of "misconceptions, misconstructions and misapplications of the particular provisions of the statute involved," as charged. I therefore dissent from the majority opinion.

Nichols, J., concurs in the dissenting opinion.