McDANIEL, RESPONDENT, *v.* EAGLE COAL CO. ET AL., APPELLANTS.

(No. 7,345.)

(Submitted March 6, 1935. Decided March 21, 1935.)

[43 Pac. (2d) 655.]

310

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for Appellants, submitted a brief; *Mr. Dousman* argued the cause orally.

*Mr. John G. Skinner, Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Respondent, submitted a brief; *Mr. Rankin* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

While in the employ of the Northwestern Improvement Company as a coal miner, in the year 1921, W. R. McDaniel lost his left eye as the result of an industrial accident, for which he received full compensation under the Workmen's Compensation Act (Laws 1915, Chap. 96, as amended). Notwithstanding his condition, McDaniel was employed by the Eagle Coal Company for more than two years prior to November, 1930, when he was again the victim of an industrial accident, in which the vision of his right eye was destroyed, rendering him totally blind.

McDaniel is a married man with a family, and, considering the wages he was receiving, was entitled to compensation at the rate of $20 per week. The record is not clear as to the exact nature of the injury, but it would seem that the workman was paid $20 per week for a period of 26 weeks as for a temporary disability, and was later awarded compensation for the loss of an eye at the rate of $20 per week for 100 weeks; after a total payment of $2,000, the weekly payments were discontinued by the Industrial Accident Board. McDaniel made application for further compensation as for total disability, which application, with a motion for rehearing thereon, was denied. The claimant appealed to the district court, and the matter was there submitted on an agreed state-

ment of facts. The district court agreed with the board that the claimant was not entitled to compensation as for total permanent disability, but found that he had been paid $520 for temporary disability, and $1,480 on his award for partial permanent disability, and held that he was still entitled to $20 per week for a period of 26 weeks. The Industrial Accident Board has appealed from the judgment on the ground that the additional award is not justified by the law, and the claimant has made a cross-assignment of error on the court's refusal to award him the compensation provided for total permanent disability; on oral argument the Attorney General requested that this question be determined, as the claimant is without funds to appeal. We will therefore dispose of the question presented by the cross-assignment.

The Attorney General argues that decisions from other states are of little benefit, as each case is decided on the statute before the court, and they differ widely. This is only partially true. In most of the states the fundamental purpose of the Workmen's Compensation Act is the same as it is in this state: that is, that "industry should care for its manpower wrecked by reason of laboring in the industry," thus removing the direct burden on society of caring for the incapacitated, although the losses are ultimately passed on to society in the price paid by the consumer for the product of the industry. (*Moffett* v. *Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973.) With this thought in mind, most of the provisions for compensation for injury resulting from industrial accidents, though they may be differently worded, aim at the same result and may be considered as substantially similar, unless a different intent is apparent in a particular act.

On the subject before us, it is said that "there is some apparent disagreement as to whether an employee who has suffered an injury to one of his eyes should be allowed compensation for total incapacity, where he subsequently sustained an injury to his other eye. This apparent disagreement may at least be partially accounted for by the different phrase-

ology of the different Acts." (Note IV, 8 A. L. R. 1326.) Minnesota has held that one so injured can be compensated only for the loss of one eye, as fixed by the schedule (*State ex rel. Garwin* v. *District Court*, 129 Minn. 156, 151 N. W. 910; *Zinkin* v. *Melrose Granite Co.*, 143 Minn. 397, 173 N. W. 857, 858), but this holding was clearly compelled by the special provision in the Act of that state, declaring: "If an employee receive an injury, which, of itself, would only cause permanent partial disability, but which, combined with a previous disability, does in fact cause permanent total dsability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury." Similar provisions, compelling like decisions, exist in the Workmen's Compensation Acts of Tennessee, Kentucky and Texas, so that the decisions from these states are not authorities to be considered in states where, as here, no such provision is found in the Act. Evidently, because of the existence of this provision, the supreme court of Tennessee has declared: "It was not the purpose of the Tennessee Workmen's Compensation Act, as of some of the states, to measure compensation by the incapacity to work and the consequent decrease of wage-earning ability." (*Catlett* v. *Chattanooga Handle Co.*, 165 Tenn. 343, 55 S. W. (2d) 257.)

Without such a provision, but with a schedule of weekly awards to be made for the loss of specific members and a general provision for award for total disability, it was held in Connecticut that one having lost his remaining eye was entitled to compensation for total disability. (*Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 97 Atl. 1020; *Saddlemire* v. *American Bridge Co.*, 94 Conn. 618, 110 Atl. 63.) However, the Connecticut Act was thereafter amended to include a provision similar to that of the Minnesota Act, and the court was forced to the contrary holding. (*Dombrozzi* v. *E. Gross & Co.*, 112 Conn. 627, 153 Atl. 780.)

Michigan, having the same question before its court, declared the Minnesota case of *State ex rel. Garwin* v. *District Court*, above "not a precedent" because of the quoted provision;

it found its statute, which is similar to our own, "ambiguous" but resolved the ambiguity in favor of the employer, and reached the same conclusion as did the Minnesota court; no other authorities are cited (*Weaver* v. *Maxwell Motor Co.*, 186 Mich. 588, 152 N. W. 993, Ann. Cas. 1917E, 238, L. R. A. 1916B, 1276), and decided a subsequent case on the authority of the *Weaver Case* (*Collins* v. *Albert A. Albrecht Co.*, 212 Mich. 147, 180 N. W. 480).

Pennsylvania has a provision scheduling compensation for loss of members of the body evidently similar to our own, and its supreme court has said that "the standard thus fixed is in the nature of compensation for the damage resulting * * * without regard to personal capacity to labor," and therefore held that a single eye destroyed was to be compensated for under the schedule as for "the loss of an eye" without regard to the fact that the claimant had previously lost the other eye. The court declared: "If we now compensate him for total disability, he would be getting a preference over his neighbor, who might have lost both eyes in the same accident." How this "preference" arises we are at a loss to understand, as it does not appear that, as here, the injured workman received compensation for the loss of his other eye. The court sought to justify its decision by declaring that "the result of a contrary conclusion would mean that thousands of men employed in this commonwealth who have only one leg, one arm, or one eye would be subjected to a very great handicap in the field of labor. * * * It surely will follow these men will lose their employment. No one will employ such a man when another, without handicap, equally as good, can be secured." (*Lente* v. *Luci*, 275 Pa. 217, 119 Atl. 132, 133, 134, 24 A. L. R. 1462.) This argument is not at all persuasive, for with the policy, wisdom and expediency of a provision this court has nothing to do; those are considerations which may be indulged in only by the legislature. (*State ex rel. Board of County Commrs.* v. *District Court*, 62 Mont. 275, 204 Pac. 600; *Trumper* v. *School District*, 55 Mont. 90, 173 Pac. 946; *Hill* v.

*Rae*, 52 Mont. 378, 158 Pac. 826, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495.)

Indiana likewise has a schedule which provides for "loss of one eye * * * one hundred weeks" with an additional provision for "total disability * * * five hundred weeks." In 1921 its Appellate Court held that a special provision prevails over a general one, and that the special provision here is "arbitrary," so that one losing his remaining eye was entitled to compensation only for 100 weeks; the opinion is by Justice Dausman. (*Stevens* v. *Marion Machine, F. & S. Co.*, 77 Ind. App. 28, 133 N. E. 23.) No authorities are cited. A year later that court, in an opinion citing many of the cases hereinafter listed, and which was concurred in by Justice Dausman, held that such a man was entitled to compensation for total disability (*Calumet Foundry Co.* v. *Mroz*, 79 Ind. App. 305, 137 N. E. 627), but, on a second appeal, returned to the rule announced in the *Stevens Case* (*Calumet Foundry Co.* v. *Mroz*, 80 Ind. App. 619, 141 N. E. 883).

The foregoing cases, even including those which, by reason of the special provision quoted, are inapplicable, constitute but a small proportion of the cases in which the question here involved has been considered and are listed under the "Minority View." (67 A. L. R. 797.)

Massachusetts has a provision for a fixed compensation "while the incapacity for the work resulting from the injury is total." Interpreting this provision in a case presenting the question here considered, the Supreme Judicial Court of that state said: "The employee, when he entered the service of the subscriber, had that degree of capacity which enabled him to do the work for which he was hired. That was his capacity. It was an impaired capacity. * * * But nevertheless, it was the employee's capacity. It enabled him to earn the wages which he received. * * * The Act * * * fixes no method for dividing the effect of the injury and attributing a part of it to the employment and another part to some pre-existing condition, and it gives no indication that

the legislature intended any such division. The total capacity of this employee was not so great as it would have been if he had had two sound eyes. His total capacity was thus only a part of that of the normal man. But that capacity, which was all he had, has been transformed into a total incapacity by reason of the injury. That result has come to him entirely through the injury." The court cited the case of *Weaver* v. *Maxwell Motor Co.,* above, and said: "We are constrained not to follow it." (*Branconnier's Case,* 223 Mass. 273, 111 N. E. 792, 793.)

In Illinois the supreme court cites the Michigan case and the Massachusetts case, and declares in favor of the rule of the latter state. (*Wabash Ry. Co.* v. *Industrial Commission,* 286 Ill. 194, 121 N. E. 569.)

Alaska: Construing the Compensation Act of Alaska, the Circuit Court of Appeals for this circuit (the Ninth) expressly disapproved of the reasoning and conclusion reached in the Michigan case of *Weaver* v. *Maxwell Motor Co.* and the Pennsylvania case of *Lente* v. *Luci,* supra. (*Killisnoo Packing Co.* v. *Scott,* 14 Fed. (2d) 86.) Here the court referred to the Massachusetts case as "the leading case" on the subject. This last statement is borne out by the fact that the case is cited and followed, on principle, regardless of the difference in phraseology in the several Acts construed, in practically all of the following cases upholding the right of a claimant to compensation as for a total disability for the loss of an eye, when that eye was the only one the claimant had: California (*Liptak* v. *Industrial Commission,* 200 Cal. 39, 251 Pac. 635); Colorado (*Industrial Commission* v. *State Fund,* 71 Colo. 106, 203 Pac. 215); Connecticut (*Fair* v. *Hartford Rubber Co.,* 95 Conn. 350, 111 Atl. 193); Idaho (*McNeil* v. *Panhandle Lumber Co.,* 34 Idaho, 733, 203 Pac. 1068); Illinois (*Heaps* v. *Industrial Commission,* 303 Ill. 443, 135 N. E. 742); Iowa (*Jennings* v. *Mason City Sewer Pipe Co.,* 187 Iowa, 967, 174 N. W. 785); Kansas (*Moore* v. *Western Coal Co.,* 124 Kan. 214, 257 Pac. 724); Louisiana (*Guderian* v. *Sterling Sugar Co.,*

151 La. 59, 91 So. 546); Maryland (*Congoleum Nairn* v. *Brown*, 158 Md. 285, 148 Atl. 220, 222, 67 A. L. R. 780); New Jersey (*Combination Rubber Mfg. Co.* v. *Obser*, 95 N. J. L. 43, 115 Atl. 138); New York (*Kriegbaum* v. *Buffalo Wire Works Co.*, 224 N. Y. 621, 131 N. E. 875); Oklahoma (*Nease* v. *Hughes Stone Co.*, 114 Okl. 170, 244 Pac. 778); and Rhode Island (*In re J. & P. Coats*, 41 R. I. 289, 103 Atl. 833). For additional cases and discussion see note IV, 67 A. L. R. 794, and 73 A. L. R. 711.

After New York had declared this rule, the legislature enacted a provision similar to that noted in Minnesota (*Blaes* v. *E. W. Bliss Co.*, 177 App. Div. 370, 163 N. Y. Supp. 722), but thereafter adopted an Act permitting the original construction (*State Ind. Com.* v. *Newman*, 222 N. Y. 363, 118 N. E. 794).

The Attorney General contends that, because we have a schedule of awards for enumerated losses, among which is listed "total blindness of one eye ＊ ＊ ＊ 100 weeks" (sec. 2920, Rev. Codes 1921), a claimant is barred from an award for a greater period than 100 weeks, when his only injury received is "the loss of one eye," citing *Dosen* v. *East Butte Copper Min. Co.*, 78 Mont. 579, 254 Pac. 880, and *Rom* v. *Republic Coal Co.*, 94 Mont. 250, 22 Pac. (2d) 161. The cited cases go no further than to hold that, where an award is made under the schedule, it is exclusive, and the claimant is entitled to no other award in addition, as, for example, an additional "healing period." The contention is answered in the Maryland case cited, among others; the court of that state saying: "There is some room for the argument that the statutory schedule of injuries, and the specific nature of the Act generally, evince an intention to furnish in the Act itself as far as possible all data for its administration, without leaving variable, unpredictable elements to be settled by litigation. The Act does not contain any provision explicitly settling the question now considered. And in the specification of various bodily injuries and the compensation for each one, under the head of 'Permanent Partial Disability,' there seems to be nothing

to exclude a classification of the results of an accident as permanent total disability. * * * After weighing the arguments on both sides, this court adopts the construction that the consequences to the particular workman determine the degree of disability, so that if an injury deprives him of all the capacity he has left after a previous accident, that result might be classed as total disability from the injury."

It is said that the California decisions, on which the claimant principally relies, are not authoritative, as California has no schedule such as ours, but the result there is the same, since the California Act authorizes the commission to adopt a schedule and to change it from time to time, this making the Act more flexible. Having adopted a schedule, the California law is in this respect the same as ours. (See 27 Cal. Jur. 508, and cases there cited.)

It is true that section 2920, above, now provides: "The loss of both * * * eyes * * * in one accident, in the absence of conclusive proof to the contrary shall constitute total disability, permanent in character. Provided, however, that the percentage of permanent disability caused by any single accident or injury shall be so computed as to cover the permanent disability caused by that particular injury without reference to any previous physical ailment or defect or to any injury previously suffered or any permanent disability caused thereby." The proviso and the words "in one accident" were added to the original section, as amended by Chapter 121, section 16, Laws of 1925, by the amendment of 1929 (Chap. 177, sec. 16, Laws 1929).

In the first paragraph of the above section quoted, the intention of the legislature is clear: Proof of the loss of both eyes "in one accident" makes a strong prima facie case of total permanent disability. However, the proviso is ambiguous; it may be reasonably construed either to mean that the claimant shall be awarded compensation only for the injury received in the instant accident, without regard to the condition it leaves him in by reason of his having been theretofore injured, or

that he shall be compensated for the percentage of permanent disability he has suffered by the accident, regardless of whether that degree of disability would have resulted from the accident, had he not had some previous physical ailment, defect, or injury. The Michigan court resolved such an ambiguity against the claimant, but under our law every part of the Compensation Act must be liberally construed. (Sec. 2964, Rev. Codes 1921), and this means liberally in favor of the claimant. (*Wirta* v. *North Butte Min. Co.*, 64 Mont. 279, 210 Pac. 332, 30 A. L. R. 964.) Under the liberal rule of construction, the second suggested construction is the more reasonable and logical and in harmony with this court's holding in cases involving "physical ailments and defects." (*Nicholson* v. *Roundup Coal Co.*, 79 Mont. 358, 257 Pac. 270.)

In addition to the foregoing provision declaring prima facie total disability in certain cases, we have a general provision for compensation for any injury "producing total disability permanent in character," at the scheduled rate "for the period not exceeding five hundred (500) weeks." (Sec. 2913, as amended by Chapter 177, sec. 13, Laws of 1929.)

While the Indiana court held (*Stevens* v. *Marion · Machine Co.*, above) that in such a situation the rule is that a special provision prevails over a general one, the rule applicable here is that, "where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy." (*City of Butte* v. *Industrial Accident Board*, 52 Mont. 75, 156 Pac. 130, 131.) The two provisions having reference to permanent total disability can readily be harmonized without inconsistency. Section 2920, as amended, declares the rule to be applied in awarding compensation for the loss of both legs, arms, or eyes "in the same accident," but leaves all other questions as to total disability to be determined under the general provision above.

If any question remains as to the propriety of awarding this claimant compensation for total disability, or as to the legislative intent on the subject, it is settled by the provision that, "should a further accident occur to a workman who is already receiving compensation hereunder, or who has been previously the recipient of a payment or payments under this Act, his further compensation shall be adjusted according to the other provisions of this Act, and with regard to his past receipt of compensation." (Sec. 2923, Rev. Codes 1921, as amended by Chap. 177, sec. 5, Laws of 1929.) Originally the section read, after "the other provisions of this Act," "and with regard to the combined effect of his injuries," but, with this provision eliminated, the section requires an award "according to" the provisions respecting total disability if by the injury received the claimant was, in fact, totally disabled. While the loss of one eye will not ordinarily render a man totally disabled, that is the effect of an injury which destroys the only eye a man has. Such is the reasoning in the great majority of the decided cases, and with this reasoning we agree.

There remains the question as to the amount of the award. The court fixed the rate of $20 per week, and this rate is not questioned. The claimant is entitled to such payments extending over a period of 500 weeks, but, as he has already received payments extending over two periods of 100 weeks each, and his compensation must be "adjusted" according to the payments he has heretofore received, under the last-quoted section, there must be a deduction of the payments made over a period of 200 weeks. Without such a provision as our last-cited statute, the Iowa court declared that such a deduction worked substantial justice "whether the commissioner had authority to make such reduction or not." (*Jennings* v. *Mason City Sewer Pipe Co.*, above.)

For the reasons stated, the judgment is reversed and the proceedings remanded to the district court of Carbon county, with direction to award the claimant compensation for 300 weeks, beginning with the time the Industrial Accident Board

discontinued payments in the year 1932, the amount due to date of judgment to be paid in a lump sum.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.