Note.—See under (1) 32 Cyc. pp. 445, 446. (2) 38 Cyc. p. 1548; 26 R. C. L. p. 1061; 4 R. C. L. Supp. p. 1694. (3) 38 Cyc. p. 1577; 26 R. C. L. pp. 1074-1079; 3 R. C. L. Supp. p. 1491; 4 R. C. L. Supp. p. 1696; 5 R. C. L. Supp. p. 1438. (4) 3 C. J. pp. 919, § 818; 927, § 819. (5) 4 C. J. p. 853, § 2834; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. 90; 5 R. C. L. Supp. p. 79,

---

### NEASE v. HUGHES STONE CO. et al.

No. 16265—Opinion Filed Sept. 15, 1925.

Rehearing Denied March 23, 1926.

(Syllabus.)

**1. Master and Servant—Workmen's Compensation Law—"Permanent Total Disability"—Loss of Eye by One-Eyed Employe.**

Under section 1290, subdivisions 1 and 6, C. O. S. 1921, where an employe who had previously lost the sight of his left eye, received an injury in the course of his employment destroying his right eye, thereby leaving him permanently and totally disabled, held, that he is entitled to compensation for permanent total disability.

**2. Same — "Total Disability" — Previous Partial Disability—Effect.**

Total disability, as used in the Workmen's Compensation law of this state, takes no account of a state of partial disability or impaired health existing in the claimant previous to the happening of the accident claimed to have caused such total disability.

Error from State Industrial Commission.

From an award of workmen's compensation to W. A. Nease, he brings action to review decision. Reversed and remanded, with directions.

J. A. Edwards and Blanton, Osborn & Curtis, for petitioner.

George F. Short, Atty. Gen., Fred Hansen, Asst. Atty. Gen., and Burford, Miley, Hoffman & Burford, for respondents.

CLARK, J. This action was commenced in this court by W. A. Nease, as petitioner, against the Hughes Stone Company, Associated Employers' Reciprocal, James W. Gullett, and Clifford Ireland, and the State Industrial Commission, as respondents, to reverse and vacate an award made on the 7th day of March, 1925, awarding petitioner compensation for the loss of an eye, and denying petitioner compensation for total disability. The agreed statement of facts upon which this matter was heard is as follows:

"That W. A. Nease, claimant herein, was blind in one eye prior to his employment by the Hughes Stone Company; that for the year prior to September 13, 1922 on which date the accident complained of herein occurred, his average daily wage was $5.77; that on the 13th day of September, 1922, while in the course of his employment, and arising out of same, there was an explosion which totally destroyed the sight of his remaining eye. Prior to his employment he had lost the use of his left eye; this accident destroyed the use of his right eye.

"It is further stipulated that claimant herein has received compensation at the rate of $16.15 per week from September 13, 1922, to date, paid semimonthly; that respondent and insurance carrier admit liability for the loss of use of the right eye and deny further liability; that the claimant claims as a result of said accident, he is permanently and totaly disabled, and that he is entitled under the statute to an award for permanent total disability."

The respondents admit liability for compensation for a period of 100 weeks for the loss of the right eye, but deny further liability.

A careful reading of the opinion by Commissioner Fenton, in which he holds that the petitioner was entitled to compensation for a period of 100 weeks under subdivision 3 section 7290, C. O. S. 1921, convinces us that said holding places an erroneous construction on the clear intent of the Legislature in enacting the Workmen's Compensation Law. Said opinion recites that the petitioner is permanently disabled. The statute under which the petitioner is entitled to compensation is section 7290, C. O. S. 1921, subdivision 1, as amended by chapter 61, sec. 6, Session Laws of 1923, and reads as follows:

"Permanent Total Disability: In case of total disability adjudged to be permanent, 66 2-3 per centum of the average weekly wages shall be paid to the employe during the continuance of such total disability not exceeding 500 weeks; loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cas-

es permanent total disability shall be determined in accordance with the facts."

Subdivision 6 of said section as amended by chapter 61, Session Laws of 1923, reads as follows:

"Previous Disability: The fact that an employe has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury; but in determining compensation for the later injury his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury."

The award was made petitioner under subdivision 3 of section 7290, C. O. S. 1921, which is as follows:

"For the loss of an eye, 100 weeks."

In this case the petitioner, who had previously lost an eye, was employed by the Hughes Stone Company, and as a result of an accident in the course of his employment his remaining eye was destroyed, rendering him totally blind and permanently disabling him as a wage earner. This question has been before the Supreme Court of Massachusetts in the case of In re Branconnier, 111 N. E. 792, and that court said:

"The employe when he entered the service of the subscriber, had that degree of capacity which enabled him to do the work for which he was hired. That was his capacity. It was an impaired capacity as compared with the normal capacity of a healthy man in the possession of all his faculties. But, nevertheless, it was the employe's capacity. It enabled him to earn the wages which he received. He became an employe under the act and thereby entitled to all the benefits conferred upon those coming within that description. The act affords a fixed compensation for a limited time 'while the incapacity for the work resulting from the injury is total.' It establishes no other standard. It fixes no method for dividing the effect of the injury and attributing a part of it to the employment and another part to some pre-existing condition, and it gives no indication that the Legislature intended any such division. The total capacity of this employe was not so great as it would have been if he had had two sound eyes. His total capacity was thus only a part of that of the normal man. But that capacity, which was all he had, has been transformed into a total incapacity by reason of the injury. That result has come to him entirely through the injury. In principle this case is concluded by the reasoning and the decision of Madden's Case, 111 N. E. 379 where the subject of pre-existing infirmities of the employe as bearing upon the right and extent of compensation under the act, was discussed at large. Brightman's Case, 220 Mass. 17, 107 N. E.

527. This conclusion is in harmony with Ball v. William Hunt & Sons, Ltd. (1912) A. C. 496, Lee v. William Baird & Co., Ltd., 45 Scotch Law Reports, 717, and Schwab v. Emporium Forestry Co., 167 App. Div. 514, 153 N. Y. Supp. 234. The statute under consideration in Weaver v. Maxwell Motor Co., 152 N. W. 993, appears to have been so different as perhaps not to make that decision inconsistent with our views. But if, and so far as, it is inconsistent, we are constrained not to follow it. Decree affirmed."

In Re Madden, 111 N. E. 379, the Supreme Court of Massachusetts in passing on this character of a case said:

"It has been argued with force on behalf of the insurer that since the harm to the employe was not wholly the effect of the work, but came in large part from the previous weakened condition of the employe's heart, hence either there can be no award of compensation, or it should be restricted to that part of the injury which resulted directly from the work, and the part of the injury which flowed from the previous condition should be excluded. Even though the premise be sound, the conclusion does not follow. The act makes no provision for any such analysis or apportionment. It protects the 'employe.' That word is defined in part 5, sec. 2, as including 'every person in the service of another under any contract of hire,' with exceptions not here pertinent. There is nothing said about the protection being confined to the healthy employe. The previous condition of health is of no consequence in determining the amount of relief to be afforded. It has no more to do with it than his lack of ordinary care or the employer's freedom from simple negligence. It is a most material circumstance to be considered and weighed in ascertaining whether the injury resulted from the work or from disease. It is the injury arising out of the employment and not out of disease of the employe for which compensation is to be made. Yet it is the hazard of the employment acting upon the particular employe in his condition of health and not what that hazard would be if acting upon a healthy employe or upon the average employe. The act makes no distinction between wise or foolish, skilled or inexperienced, healthy or diseased employes. All who rightly are describable as employes come within the act."

New York, operating under a Workmen's Compensation Act which is similar to the Oklahoma Act, established the following rule in the case of Schwab v. Emporium Forestry Co. et al., 153 N. Y. 234:

"The claimant was injured on July 6, 1914, by having his right hand severed at the wrist. His left hand was amputated in the year 1892. The question certified is

whether the claimant is entitled to compensation for permanent total disability under subdivision 1 of section 15, or for compensation as for the loss of one hand under subdivision 3 of said section. If a man has two hands, he is presumably a more efficient worker and can receive higher wages than if crippled by the loss of one hand. The method of payment of compensation for the loss of one hand is to allow the salary which the injured party was earning for 244 weeks. If the injured party had two hands and were earning $20 a week, if he lost one hand he would recover $4,880. Another workman having lost one hand before entering the employment would be receiving, say, $10 a week for less efficient service. If that workman lost the second hand in the service, if the claim of the insurance carrier is right, he would recover for 244 weeks at $10 a week, or $2,440. So that for the loss of the second hand, which had its double value on account of the previous loss of the first hand, under this system he would be entitled to recover only half as much as for the loss of the first hand. This anomalous result would indicate that the Legislature could not so have intended. By subdivision 1 of section 15, the loss of both hands shall presumably constitute total disability. As compensation for that total disability, he is to receive 66 2-3 per cent. of the average weekly wages that he is then earning. As the man with one hand is presumably earning less wages than a man with two hands, to allow for the loss of the second hand as a permanent disability, a percentage of the weekly wage that he was then earning would be in complete harmony with compensation to one who had lost both hands by the accident, who receives his 66 2-3 per cent, upon the greater wages that he was earning at the time of the accident. Moreover, this reasoning accords with the rule which seems to be laid down in subdivision 6 of section 15, which provides that the fact that an employe has suffered previous disability shall not preclude him from compensation for a later injury, 'but in determining compensation for the later injury, or both, his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury.' Cases are cited upon the Attorney General's brief which indirectly lend support to his contention that the claimant has the right to recover as for a permanent disability. But the decision may well rest upon the logic of the situation, in view of the fact that the amount of compensation depends upon the weekly wage, and the weekly wage is influenced by his crippled condition at the time of the accident. In answer to the question certified we decide that claimant is entitled to recover as for total disability."

Kriegbaum v. Buffalo Wire Works Co.. Inc., et al. (N. Y.) 1918) 169 N. Y. Supp. 307. 121 N. E. 875; In re J. & P. Coats.

Inc., et al. (R. I. 1918) 103 Atl. 833; Jennings v. Mason City Sewer Pipe Co. (Iowa 1919) 174 N. W. 785; Brooks v. Peerless Oil Co., Inc. (La. 1920) 83 South. 633; Guderian v. Sterling Sugar & Ry. Co., Limited (La. 1922) 91 South. 546; Fair v. Hartford Rubber Works (Conn. 1920) 111 Atl. 193. In McNeil v. Panhandle Lumber Co. et al. (Idaho, 1921) 203 Pac. 1068, the Supreme Court of Idaho, in the 6th paragraph of the syllabus said:

" 'Total disability' as used in the Workmen's Compensation Law of this state takes no account of a state of partial disability or impaired health existing in the claimant previous to the happening of the accident claimed to have caused such total disability."

In the case of Heaps v. Industrial Commission et al. (Ill. 1922) 135 N. E. 742, in the opinion by Mr. Justice Duncan it is said:

"It is now a well-established rule, in this state and other states, that where an employe. who previous to his employment has lost an eye, loses the other eye as the result of an injury, or who has lost an arm, and loses a leg as the result of an injury arising out of and in the course of his employment, he is entitled to compensation for total permanent disability. Wabash Railway Co. v. Industrial Com., 286 Ill. 194, 121 N. E. 569; In re Branconnier, 223 Mass. 273, 111 N. E. 792; Brooks v. Peerless Oil Co., 146 La. 383, 83 South. 663. The reason for this rule is that by the destruction of the one remaining eye the employe loses all the capacity to see that he has, and an injury causing such a loss of the remaining eye necessarily causes total disability to see."

When Nease entered the service of his employer he had but one sound eye, and the employer and the insurer must have known this. He was presumably paid the wages which a man in that impaired condition was worth in that service. When by the last injury Nease lost all that remained of his normal capacity, after the prior injury, he fell within the class designated by the statutes as "permanent total disability" and was entitled to receive compensation allowed for that class. It was no doubt the clear intent of the Legislature, in providing compensation for the loss of an eye, to fix the compensation for the loss of one of two sound eyes, producing only partial disability. It would be manifestly unfair and unjust to petitioner to say for the loss of one eye, when he had two, that he should be paid 100 weeks, and then should he change his occupation or his employer and lose the other eye, for the loss of both eyes he

would only receive compensation for 200 weeks. Section 7290, C. O. S. 1921, subdivision 1, provides that the loss of both eyes, in the absence of conclusive proof to the contrary, constitutes permanent disability. and the employe should be entitled to compensation for 500 weeks. Nease's weekly wages were doubtless reduced accordingly, so that at the time of his last injury he was receiving as wages only such wages as he was entitled to, owing to his impaired capacity when he entered the service of his employer. He had that degree of capacity which enabled him to work for which he was hired. That was his capacity. It was an impaired capacity as compared with the normal capacity of a healthy man possessing all of his faculties. But, nevertheless, it was the employe's capacity, and it enabled him to earn the wages which he received, and his compensation is fixed and based on that capacity and ability to earn wages. And that capacity being totally destroyed, he was entitled to an award for permanent total disability, and the Industrial Commission erred in not so holding.

This cause is remanded to the Commission, with instructions to vacate the award of compensation for the loss of an eye, and to award petitioner compensation for total permanent disability, allowing credit for the sums that have heretofore been paid.

NICHOLSON C. J., and MASON, HARRISON, PHELPS, LESTER, HUNT, and RILEY, JJ., concur.

Note.—See under (1) Workmen's Compensation Acts, C. J. p. 94, § 84; anno. L. R. A. 1916A, 256; 8 A. L. R. 1324, 24 A. L. R. 1466. 28 R. C. L. p. 821; 4 R. C. L. Supp. p. 1867; 5 R. C. L. Supp. p. 1577. (2) Workmen's Compensation Acts, C. J. p. 94, § 84.