STARR COAL CO. v. EVANS et al.

No. 32356. Oct. 28, 1947.

*184 P. 2d 638.*

Koch & Woodliff, of Henryetta, for petitioner.

L. B. Norton, of Henryetta, Mont. R. Powell, Don Anderson, and Thomas D. Lyons, all of Oklahoma City, and Mac

Q. Williamson, Atty. Gen., for respondents.

PER CURIAM. This is an original proceeding brought in this court by Starr Coal Company, hereinafter referred to as petitioner, to review an award of the State Industrial Commission in favor of D. M. Evans, who will hereinafter be referred to as respondent.

The record discloses that respondent in due time filed with the commission his first notice of injury and claim for compensation in which it is stated that on August 19, 1943, while in the employ of petitioner he sustained an injury to his right eye resulting in an entire loss of use of that eye.

A hearing was had before a trial commissioner at which it developed that on New Year's Eve of the year 1918 respondent had been injured in a fire in which his home was destroyed and his face and hands had been badly burned. Special Indemnity Fund was thereupon upon motion of petitioner made a party to the proceeding. The hearing proceeded before the trial commissioner, who at the conclusion thereof, after finding that respondent while in the employ of petitioner sustained an injury to his right eye, further found:

"That claimant was a physically impaired person, as defined by Chapter 8, Title 85 O.S.A.; that prior to said accident claimant had a 50% loss of vision in each eye; that he had a 75% loss of use of the right hand and 35% loss of use of the left hand; that said loss of use of his said hands was obvious and apparent both from observation or examination by an ordinary layman.

"That respondent carried no compensation insurance and was not an approved own risk carrier as required by law; that the Special Indemnity Fund has no liability herein and respondent alone is liable for the disability caused by claimant's accidental injury of August 19, 1943, and for the combined disabilities of claimant as hereafter set out.

"That as a result of said accident of August 19, 1943, claimant lost the 50% vision that he then had in said eye; that by reason of the disability caused by the last injury and the pre-existing disabilities to his eyes, claimant has suffered the complete loss of vision in his right eye and 50% loss of vision in his left eye, and is entitled to 375 weeks compensation therefor at the rate of $18 per week, or a total sum of $6,750, less the deductions hereinafter set out."

Upon these findings an order was entered awarding respondent compensation in the sum of $6,750, payable at the rate of $18 per week for a period of 375 weeks and Special Indemnity Fund was dismissed from the proceeding. This award was affirmed by the commission en banc on appeal.

Petitioner contends that the evidence is insufficient to sustain the award. The evidence is undisputed that on New Year's Eve in 1918 respondent was badly burned about his face and hands when his home was completely destroyed by fire. It is the contention of petitioner that the loss of respondent's eye is due solely to the injury sustained during the fire above mentioned. This necessitates a review of the evidence. Respondent admitted that he was badly burned in the fire above described. He, however, testified that so far as he was able to observe his vision was not materially affected thereby; that notwithstanding the injury to his hands he was still able to and did satisfactorily perform manual labor; that since that time he had been employed to work in oil fields and in coal mines; that at the time he received his present injury he was employed by petitioner to work in its coal mine and that while engaged in such employment and in snubbing coal something flew into his eye; that he removed a portion of said substance; that he thereafter suffered severe pain in his eye; that he notified the superintendent of petitioner of his injury and that he was directed by him to go to Dr. Holmes for treatment; that he immediately called upon Dr. Holmes and that the doctor removed further substance from his eye and con-

tinued to treat him for several days; that the condition of his eyes, however, grew worse. He then called upon Dr. Bollinger for treatment who informed him that his eye had become infected and ulcers had formed therein. Dr. Matheny was then called in consultation and he was advised by him that it would be necessary to have the eye removed; that Dr. Matheny then removed the eye. He further testified that after he recovered from his prior injury he experienced no trouble with his eye until he received the present injury.

The evidence establishes beyond controversy that by reason of burns received by respondent in 1918 he suffered 50% loss of vision of each eye and 75% loss of use of his right hand and 35% loss of use of his left hand. There is also medical evidence to the effect that the loss and removal of his right eye was due solely to the burns received in 1918. Dr. Holmes testified that respondent came to him for treatment on August 20, 1943; that he examined his eye and removed particles of coal dust therefrom but that he discovered no injury to his eye; that respondent complained of pain in the eye and that he continued to treat the eye for several days; that he discovered four days thereafter that an ulcer had formed below the pupil on the cornea of the eye which finally necessitated its removal; that the ulcer was not caused by reason of any recent injury to the eye but that in his opinion it was caused solely by the injury sustained in the fire of 1918; that the ulcer was caused by lack of nutrition; that when nutrition is cut off the eye will die and that the lack of nutrition was due solely to his eyelids having been burned in the fire of 1918. Dr. Holmes in this respect was corroborated by Dr. Bollinger and Dr. Matheny. Dr. Matheny, however, testified that any injury to an eye caused by being struck by particles of coal might cause inflammation which would produce ulcers and that inflammation might develop within three or four days after being so injured.

Dr. Randel is behalf of respondent testified that particles of coal lodging in a person's eye might cause inflammation which would produce ulcers and that inflammation might develop within a short time after receiving such injury. He further testified that he examined respondent after his eye had been removed; that he obtained from him a history of the case, including a history of the injury sustained in 1918, and in answer to a hypothetical question stated that it was apparent and obvious that the injury sustained to the eye on August 19, 1943, was responsible for its loss. Dr. Henley likewise in substance so testified.

While there is expert evidence strongly tending to support the theory and contention of petitioner when the evidence is taken and considered as a whole, we cannot say that there is no competent evidence tending to sustain the finding of the Industrial Commission that the loss of respondent's eye was due to the injury sustained on August 19, 1943. The fact that the former injury occurred in the year 1918 and that inflammation had not developed at the time he received his present injury in 1943 and inflammation did develop within four days thereafter, is a strong circumstance tending to support the finding of the commission.

It is further contended that the commission was without authority to award respondent compensation on the basis of permanent partial loss of the sight of both eyes. It is asserted that respondent's left eye was not affected by the latter injury and that the utmost compensation that could have been awarded would have been for the loss of use of the right eye alone, or 100 weeks at $18 per week. We have numerous times held to the contrary. In the case of Hubbard Drilling Co. v. Moore, 158 Okla. 132, 12 P. 2d 900, we said:

"Under 7290, C.O.S. 1921, as amended by chapter 61, sec. 6, Session Laws 1923, where a claimant who has previ-

ously lost the sight of his right eye, receives an injury in the course of his employment destroying 50 per cent of his left eye, thereby leaving him permanently partially disabled, the claimant is entitled to compensation for partial impairment of both eyes, and not for the impairment of the left eye by itself."

The above rule was first adopted in the case of Nease v. Hughes Stone Co., 114 Okla. 170, 244 P. 778, and is still adhered to. See Special Indemnity Fund v. Sims, 196 Okla. 101, 163 P. 2d 210; Special Indemnity Fund v. Davidson, 196 Okla. 118, 162 P. 2d 1016. The commission committed no error in awarding compensation based on permanent partial loss of sight of both eyes.

Petitioner also contends that by reason of respondent's prior injury he was totally permanently disabled within the meaning of the Workmen's Compensation Act and he could not therefore recover compensation because of a future injury. This contention cannot be sustained. The evidence discloses that notwithstanding respondent's previous injury he was still able to perform and did satisfactorily perform manual labor. His earning capacity was not entirely destroyed by reason of his prior injury. Such earning capacity as he still had was further impaired by his present injury. He was therefore entitled to recover compensation by reason of such injury notwithstanding the previous injury. 85 O.S. 1941 §22, subd. 6.

Petitioner finally contends that the commission erred in discharging the Special Indemnity Fund from the proceeding. The record discloses that petitioner at the time the accident occurred had no compensation insurance nor did it have an "own risk permit," as provided by 85 O.S. 1941 §61. The liability of the Special Indemnity Fund as to physically impaired persons is fixed by section 2, Title 85, S. L. 1943. This section in part provides:

" . . . provided, however, the provisions and benefits of this Act shall who is employed by an employer as denot be available to any employee, who is a 'physically impaired' person, and fined by the Workmen's Compensation Law who shall fail to secure the payment of compensation benefits as required by law, but such employee shall not be precluded from receiving compensation for a later injury while employed by such employer, as is now provided by law, all such benefits to be paid by such employer, aforesaid; . . "

Petitioner concedes that on the date the accident occurred it had no compensation insurance nor a permit to carry its own risk, as provided by 85 O.S. 1941 §61. The record discloses that it had at that time on file an application for such permit. It is stipulated:

"That at the time of the alleged accident herein, the respondent Starr Coal Company, a corporation had on file and pending before the Industrial Commission of the State of Oklahoma, employer's application for permission to carry its own risk without insurance; that said application was renewed on or about the 21st day of August, 1944, and an order made granting the respondent the right to carry their own risk, copy of which is attached hereto and marked 'Exhibit B.'

"That since the enactment of chapter 8, a new chapter to title 85 Workmen's Compensation Act, Oklahoma Statutes 1941 and supplemental Statutes 1943, known and referred to as the Special Indemnity Fund. The respondent has paid all taxes required therein and thereunder for injured employees and has collected from the injured employees the amount required and set forth in the act and paid the same to the Oklahoma Tax Commission, to the credit of the Special Indemnity Fund, as provided by the Act."

The record discloses that the application mentioned in the stipulation was granted by the commission on September 2, 1944. The order in substance exempts petitioner from carrying compensation insurance and grants it per-

346

mission to carry its own risk from September 1, 1944, to June 30, 1945.

It is the contention of petitioner that since it had on file before the commission an application for permission to carry its own risk at the time of the accident, and since it paid all assessments and taxes as stated in the stipulation it had substantially complied with the statute so as to make available to respondent the benefits provided by section 2 of the Act of 1943, supra, and the commission therefore erred in dismissing the Special Indemnity Fund from the proceeding. We do not agree. Under the express provisions of 85 O.S. 1941 §61, it was the duty of the petitioner to carry insurance until it had obtained a permit to carry its own risk as provided by such section. Since, therefore, at the time of the accident it had neither compensation insurance nor a permit to carry its own risk, respondent under the express provisions of section 2 of the 1943 Act, supra, had a right, under 85 O.S. 1941 §§12 and 63 to elect to recover compensation against petitioner under the Workmen's Compensation Act or to bring an action to recover common-law damages. Had he elected to bring an action to recover common-law damages, the mere fact that petitioner had on file before the commission an application for a permit to carry its own risk and that it had paid all assessments and taxes as set forth in the stipulation would not have constituted a defense to such action. This being true neither can such application be pleaded as a defense in a proceeding to recover compensation under the Workmen's Compensation Act.

The order granting the permit does not purport to make it retroactive to the date of the accident. It grants petitioner the right to carry its own risk from September 1, 1944, to June 30, 1945. Petitioner is in no better position as far as this proceeding is concerned than it would have been had its application been finally denied. The

commission committed no error in dismissing the Special Indemnity Fund.

Award sustained.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, CORN, GIBSON, and LUTTRELL, JJ., concur.