RAVELIN MINING CO. et al. v.
VIERS et al.
SPECIAL INDEMNITY FUND v.
VIERS et al.

Nos. 33257, 33260.   Nov. 30, 1948.

*200 P. 2d 433.*

Fenton & Fenton, of Oklahoma City, for petitioners, Ravelin Mining Co. and National Mutual Casualty Co.

Mont R. Powell and Anthony R. Kane, both of Oklahoma City, for petitioner Special Indemnity Fund.

A. L. Commons, of Miami, and Lester Hillard, of Picher, for respondent R. L. Viers.

Mac Q. Williamson, Atty. Gen., for State Industrial Commission.

CORN, J. These are separate appeals brought by Ravelin Mining Company and its insurance carrier, National Mutual Casualty Company, hereinafter referred to as petitioners, and Special Indemnity Fund, hereinafter referred to as the Fund, to review an award of the State Industrial Commission awarding compensation to respondent, R. L. Viers.

The appeals were by stipulation consolidated for the purpose of briefing and decision.

The trial commission after hearing the evidence found that respondent sometime during the month of May, 1945, the exact date being impossible to fix, while in the employ of the Ravelin Mining Company sustained an accidental injury arising out of and in the course of employment consisting of an injury to left eye; that such injury resulted in industrial blindness, which injury being superimposed upon a preexisting cataract caused such industrial blindness; that respondent at that time was a physically impaired person in that as a result of a prior accident he had sustained the loss of use of his right eye; that as a result of both injuries respondent was permanently totally disabled and was entitled to recover compensation for his combined disabilities in the sum of $10,500 or 500 weeks at $21 per week. Under these findings the trial commissioner awarded compensation against petitioners in the sum of $2,100 payable at the rate of $21 per week, and against the Fund in the sum of $8,400, or 400 weeks at $21 per week.

The award was sustained on appeal to the commission en banc.

Petitioners first contend that respondent failed to give 30 days' written notice of his injury as provided by 85 O. S. 1941 §24, and that his claim is therefore barred. It is contended that no such notice was given. The commission, however, under said section is authorized to excuse the failure to give the written notice upon a finding that the employer or insurance carrier, as the case may be, was not prejudiced by the failure to give the notice. The commission so found. There is ample evidence to sustain this finding. The claim is not barred.

Petitioners further contend that there is no competent evidence to sustain the finding of the commission that respondent, as a result of the injury sustained in May, 1945, to his left eye, became industrially blind in that eye. It is their contention that respondent was industrially blind in both eyes and was therefore permanently totally disabled prior to the time he sustained his alleged injury in May, 1945.

Respondent testified that on or about the last of May, 1945, while in the employ of Ravelin Mining Company and while working in the mine under ground and engaged in breaking boulders, particles of rock escaped therefrom knocking his glasses loose and particles of rock and dust lodged in his left eye; that he immediately notified the ground foreman, Mr. Weaver, who was present at the time of his injury, and informed him that particles of rock and dirt had lodged in his eye; that Mr. Weaver removed particles of this rock and dirt from the eye; that he at that time requested Mr. Weaver to send him to a hospital at Picher for treat-

ment; that the hospital was a distance of two miles from where the injury occurred; that no car was then available to take him and he was therefore not taken to the hospital; that notwithstanding his eye continued to hurt and bother him he remained at work for the company and continued to work until August 22, 1945, at which time he quit on account of the condition of his eye; that he then requested the superintendent to give him an order to enter the hospital at Picher for the purpose of having his eye treated; that the superintendent informed him that it was not necessary to obtain an order, that he could enter the hospital and have his eye treated without an order; that he then went to the hospital at Picher, consulted a doctor, whose name he did not recall; that the doctor then went to the telephone and called the National Mutual Casualty Company, and that after talking to the company doctor refused to examine his eye; that as a result of the injury he finally lost his left eye; that he was as a result of an accident occurring about 18 months previous thereto industrially blind in his right eye, and that he is now practically blind in both eyes; that for four or five years prior to the time he sustained his injury of May, 1945, he had been working for various employers in and around mines, part of the time underground; that prior to the time he received his injury to the right eye he had some trouble with that eye, but that his left eye had never bothered him, and as far as he knew that eye was not affected; that he always could see well out of his left eye and that even after he sustained the injury to his right eye his left eye did not appear to be affected; that he could still see well out of that eye until he sustained his injury of May, 1945. That during this time he had worn thick lens glasses while at work.

Dr. Connell, testifying on behalf of petitioners, testified that he first saw and examined respondent August 30, 1945; that from his examination and the history of the case obtained from respondent stated that in his opinion the loss of respondent's left eye was not caused by the injury sustained May, 1945, but was caused by a cataract; that the cataract was not of traumatic origin; that respondent was at that time industrially blind in both eyes; that he seemed to be suffering with bilateral cataracts which in his opinion were of long standing and that respondent was totally permanently disabled prior to May, 1945, the date upon which he claimed to have sustained his injury.

Petitioners also offered in evidence several reports of Dr. Sanger, results of examinations of respondent made by him at the Picher hospital in 1942 and 1944. These reports show that respondent had at that time a vision of 20/200 in both eyes. It is conceded by the medical experts that a vision of 20/200 in both eyes constitutes industrial blindness. Dr. Connell, however, on cross-examination testified in his opinion one who had a vision of 20/200 in both eyes would not be able to perform ordinary manual labor. Dr. Randel testifying on behalf of the Fund in the main corroborated the testimony of Dr. Connell.

The reports of Dr. Sanger also show that both times he examined respondent he had a blood count of Kline 3 plus, Kahn 3 plus, which the doctor testified indicated a syphilitic infection. The medical experts, however, agree that the cataracts and loss of respondent's eyes was not caused by syphilis or any other disease. The doctors, testifying on behalf of petitioners and the Fund, stated that in their opinion the cataracts were senile cataracts due to old age; that such cataracts usually developed between the ages of 32 and 80 years; that they are caused by lack of nutrition. This in substance constitutes the testimony that petitioners rely upon in support of their contention that respondent was permanently totally disabled prior to May, 1945, the date upon which he claims to have sustained his injury and that the loss of his left eye was

not caused by such claim injury. There is evidence to the contrary.

Dr. McMillan testified that he first saw and examined respondent in October, 1946; that after obtaining a history of the case from respondent, which history as detailed by the doctor is substantially as testified to by claimant herein, expressed the opinion that while respondent's left eye might have been somewhat affected prior to the injury of May, 1945, the loss of vision in that eye resulted from a traumatic cataract and that such cataract was caused by the injury of May, 1945. While the evidence is conflicting as to this issue, we think the evidence of Dr. McMillan, when considered in connection with the evidence of respondent, is sufficient to sustain the finding of the commission in this respect. We have repeatedly held that this court in reviewing an award of the State Industrial Commission will not review conflicting evidence as to the cause, nature and extent of an injury for the purpose of determining its weight and value, nor will we disturb an award supported by competent evidence.

It is further asserted by petitioners that Dr. McMillan's evidence was largely based upon a false, inaccurate and incomplete history of the case given him by respondent, and is based on facts not supported by the evidence, and should therefore be disregarded as being without probative value. The evidence does not support this contention. Petitioners call attention of Dr. McMillan on cross-examination to the reports made by Dr. Sanger in 1942 and 1944, showing respondent then had a vision in both eyes of 20/200, and elicited from the doctor that this information was not furnished him in the history of the case given him by respondent. The doctor also stated on cross-examination that one with a vision of 20/200 in both eyes would be industrially blind. He, however, stated that he did not believe that one with such vision would be able to work or that he would

be able to obtain employment, and also stated that he based his opinion in part on the history furnished him by respondent that he could see well enough out of his left eye to perform ordinary manual labor, and that he did perform such labor until he sustained his injury of May, 1945. Notwithstanding the doctor was confronted with Dr. Sanger's reports made in 1942 and 1944, he still adhered to the conclusion that the loss of respondent's left eye resulted from traumatic cataract and that the cataract was caused by the injury of May, 1945. The doctor also testified on cross-examination that respondent's sight in his opinion could at least be partially restored by an operation; that an operation could be successfully performed and without endangering respondent's life. Respondent then offered to submit to an operation. Counsel for petitioners in reply, however, in open court stated that they refused to tender an operation.

The evidence fails to show that the doctor's conclusion was based on a false, inaccurate and incomplete history furnished him by respondent.

There is no evidence that respondent was advised of the contents of these reports made by Dr. Sanger. The evidence shows that, notwithstanding these reports, respondent was employed in 1942, by Dixie R. Mining Company; that he continued to work for that company in and about its mine, part of the time underground, until March, 1945, when its mines were closed; that he was then employed by the Ravelin Mining Company, petitioners herein, and continued in its employment until several months after May, 1945, the date upon which he claims to have received his injury.

Despite these reports of Dr. Sanger and whatever loss of vision respondent may have had, if any, in his left eye prior to the injury sustained in May, 1945, the evidence is conclusive that he still had left sufficient vision to per-

form ordinary manual labor and that he did satisfactorily perform such labor until he sustained his injury of May, 1945; that he thereafter lost his remaining vision, and under the evidence and opinion of Dr. McMillan the loss of this vision was caused by the injury sustained in May, 1945. In this state of the record it cannot be said that the evidence of the doctor should be disregarded as being without probative value.

Petitioners do not contend that in the event it be held that the evidence of Dr. McMillan is entitled to weight and credit there is no competent evidence to sustain the award of the commission. They, however, contend that even though his evidence be considered, the award as against them is nevertheless erroneous and excessive. It is asserted that under the testimony of Dr. McMillan and the finding of the commission, respondent's vision in his left eye was somewhat impaired prior to the time he sustained his injury in May, 1945, and that he was therefore only entitled to recover compensation as against them for the percentage of loss of vision sustained by that injury and not for total loss of use of the eye. In support of this contention they rely upon the cases of Wise-Buchanan Coal Co. v. Risco, 150 Okla. 190, 1 P. 2d 411; Ellis & Lewis Co. v. Lane, 152 Okla. 273, 4 P. 2d 104. The rule stated in the above cases, however, is not applicable when the last injury results in a total loss of use of the eye. In the case of Forrest E. Gilmore Co. v. Booth, 155 Okla. 195, 8 P. 2d 717, we held:

"Where an employee sustains an accidental personal injury arising out of and in the course of his employment, resulting in the loss of an eye in which prior to the injury there was a vision sufficient for satisfactory performance of labor, the fact that there had been a partial loss of vision of the eye prior to the injury complained of does not preclude the State Industrial Commission from making an award for the loss of the eye."

In that case petitioners made the same contention as is made by the petitioners in the instant case. We there distinguished the case relied upon by petitioners and held that the rule there announced has no application where the last injury results in a total loss of use of the eye.

That case was a cataract case. The evidence there showed that the employee had sustained a loss of vision in his right eye as a result of a cataract. He, however, had left sufficient vision to perform ordinary manual labor. He thereafter sustained an accidental compensable injury which resulted in the total loss of the use of the eye. We held that the employee was entitled to recover compensation for total loss of use of the eye rather than for the loss of percentage of vision sustained by the last injury. Every contention here made by petitioners in this respect was decided adversely to them in the above case. See, also, Eagle-Picher Mining & Smelting Co. v. Murphy, 169 Okla. 180, 35 P. 2d 952.

We have also held that under 85 O. S. 1941 §22, where an employee who had previously lost the sight of one eye receives an accidental compensable injury which results in the loss of the other eye, he is entitled to recover compensation for the loss of both eyes or for permanent total disability rather than for the loss of one eye alone. Nease v. Hughes Stone Co., 114 Okla. 170, 244 P. 778; Hubbard Drilling Co. v. Moore, 158 Okla. 132, 12 P. 2d 900; Starr Coal Co. v. Evans. 199 Okla. 342, 184 P. 2d 638.

The commission found that as a result of both injuries respondent lost the use of both eyes and was therefore permanently totally disabled, and was entitled to recover for his combined disabilities compensation on the basis of permanent total disability or 500 weeks at $21 per week, a total sum of $10,500; that he was entitled to recover from the petitioners the sum of $2,100 com-

pensation for the loss of the right eye, or 100 weeks at $21 per week, and that he was entitled to recover from the Fund the balance, $8,400 or 400 weeks at $21 per week.

The evidence shows that at the time respondent sustained his injury of May, 1945, he had as a result of a previous accident sustained the loss of use of his right eye and was therefore a physically impaired person as that term is defined by chapter 1, Title 85, S. L. 1943. Respondent under the evidence sustained his last injury in May, 1945. The compensation he is entitled to recover for his combined disabilities and the amount he is entitled to recover against the employer and insurance carrier, petitioners herein, and Special Indemnity Fund, is therefore governed by the 1945 act. Title 85, chap. 8, S. L. 1945. Section 1 of that Act, insofar as herein material, provides:

"If an employee, who is a 'physically impaired person,' receives an accidental personal injury compensable under the Workmen's Compensation Law, which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, the employee shall receive compensation on the basis of such combined disabilities, as is now provided by the laws of this state. If such combined disabilities constitute a permanent total disability, as now defined by the Workmen's Compensation Laws of this State, then such employee shall receive one hundred (100%)*per centum of the compensation, as now provided by law, for such permanent total disability. . . . Provided the employer shall be liable only for the degree or per centum of disability which would have resulted from the latter injury if there had been no pre-existing impairment. After payments by the employer or his insurance carrier, if any, have ceased, the remainder of such compensation shall be paid out of the Special Indemnity Fund provided for in sec-

tion 3 of this Act, in periodical installments and without commutation thereof to a lump sum."

The award made by the commission is in accordance with the provisions of the above section.

Since the evidence shows that as a result of his combined disabilities respondent is permanently totally disabled, the Fund is not entitled to the deduction mentioned in said section nor does it claim such deduction. It is only entitled to such deduction when the combined injuries result in a permanent disability less than total.

The Fund makes the same contentions as do petitioners. It relies upon the same assignments of error, makes the same argument, and relies on the same line of authorities. What is heretofore said in disposing of the contentions made by petitioners disposes of every contention made by the Fund.

Award against the Fund as well as against the petitioners is sustained.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, GIBSON, and LUTTRELL, JJ., concur.