## STATE v. BOTHE.

No. 12084.

Court of Civil Appeals of Texas.
San Antonio.

May 10, 1950.

Rehearing Denied June 7, 1950.

Price Daniel, Attorney General, David Wuntch, Assistant Attorney General, for appellant.

J. R. Cade, San Antonio, P. H. Long, San Antonio, for appellee.

NORVELL, Justice.

The case involves the construction of the "Second-Injury Fund" amendment to the Texas Workmen's Compensation Act.

In 1941 appellee, William I. Bothe, suffered an injury which resulted in the amputation of the right leg above the knee. On January 29, 1948, Bothe received a second injury which resulted in a like amputation of the left leg above the knee.

Bothe's employers at the time of his injuries were subscribers under the Workmen's Compensation Act. He received $100.00 in settlement of the claim growing out of the first injury and $3,500.00 as a result of the second injury.

In arriving at the amount to be paid Bothe out of the Second-Injury Fund, the Industrial Accident Board contends that he should be charged with the compensation payable under the Act for the loss of a leg at or above the knee because of the first injury, as well as for the compensation payable for the loss of a leg at or above the knee as a result of the second injury. Under this formula, Bothe would be entitled to a payment from the Second-Injury Fund of $25.00 as compensation for a period of one week. Article 8306, § 12.

The trial court in its computations took $10,025.00 (the amount payable in 401 weekly installments of $25.00 each for total and permanent disability) and deducted therefrom the sum of $3,600.00, the total of the amounts Bothe had received for the

loss of both of his legs, leaving a balance of $6,425.00. A discount of $1,186.87 was then allowed for payment in a lump sum and judgment rendered for $5,239.13, together with interest thereon from August 22, 1949, until paid.

The State, by its Attorney General, has raised six points which seem to be substantially the same as those urged in the case of Industrial Accident Board v. Miears, Tex.Civ.App., 227 S.W.2d 571, decided by the Galveston Court of Civil Appeals. We are in agreement with the Galveston Court on all except one of the points decided in the Miears case, and hold, in line with said decision, that:

1. Venue of this suit was properly laid in Bexar County where the second injury took place.

2. This is not an action for mandamus, but is a suit against the State for benefits payable out of a statutory fund. Permission to file suits such as this against the State was given by the Act of the Legislature amending the Workmen's Compensation Law by providing for a Second-Injury Fund.

3. The trial court correctly awarded a lump sum payment and allowed interest on past due payments chargeable against the Second-Injury Fund.

However, we do not agree with the Galveston Court of Civil Appeals as to the method of computing the amount due appellee from the Second-Injury Fund. In our opinion payments made or benefits provided for by the Workmen's Compensation Act for prior injuries are not to be charged against the employee in determining the amount he is entitled to from the Second-Injury Fund upon his receiving a totally disabling injury.

The Texas Second-Injury Fund amendment was adopted in 1947, H.B. 465, Chapter 349, p. 690, Acts of the Fiftieth Legislature, Article 8306, §§ 12c, 12c-1, 12c-2, Vernon's Ann.Civ.Stats. As this case turns upon the construction of this enactment, we set the same out in full, together with the emergency clause:

"Workmen's Compensation—Subsequent
Injuries
"Chapter 349
"H. B. No. 465

"An Act amending Article 8306, Section 12c, Revised Civil Statutes of Texas of 1925; and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That Article 8306, Section 12c, Revised Civil Statutes of Texas of 1925, be and the same is hereby amended so as to hereafter read as follows:

" 'Article 8306.

" 'Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association (Texas Employers' Insurance Association) shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the "Second-Injury Fund" hereinafter described, *from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries.*

" 'Sec. 12c-1. If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes pemanently and totally incapacitated through the loss or loss of use of another member or organ, *the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor,* the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as "Second-Injury Fund," hereafter defined.

" 'Sec. 12c-2. The special fund known as the "Second-Injury Fund" shall be created in the following manner:

" '(a) In every case of the death of an employee under this Act where there is no person entitled to compensation surviving said employee, the association shall pay to the Industrial Accident Board the sum of One Thousand, Five Hundred Dollars ($1,-500) to be deposited with the Treasurer of the State for the benefit of said Fund and the Board shall direct the distribution thereof.

" '(b) When the total amount of all such payments into the Fund, together with the accumulated interest thereon, equals or exceeds One Hundred Thousand Dollars ($100,000) in excess of existing liabilities, no further payments shall be required to be paid to said Fund; but whenever thereafter the amount of such Fund shall be reduced below Fifty Thousand Dollars ($50,-000) by reason of payments to such Fund, then payments to such Fund shall be resumed forthwith, and shall continue until such Fund again amounts to One Hundred Thousand Dollars ($100,000) including accumulated interest thereon.'

"Sec. 2. The fact that there is an urgent need to facilitate the employment of handicapped persons including a large number of returning veterans through the establishment of a Special Fund out of which such persons may be compensated when they sustain a subsequent injury, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

We have italicized the wording of the statute upon which the parties in their briefs place particular emphasis.

■ Appellee comes within the provisions of Article 8306, § 12c-1. He had previously lost one leg and subsequently became totally incapacitated through the loss of the remaining leg. The insurance carrier at the time the second injury occurred is "liable only for the compensation payable for such second injury." The amendment provides, however, "that in addition to such compensation (for the second injury) and after the combination of the payments *therefor,* the employee shall be paid the remainder of the compensation" for

total and permanent disability out of the Second-Injury Fund.

The word "therefor" refers to "such compensation." "Such compensation" is that payable for the second injury. Under the Act, the employee suffering an injury as set out in Article 8306, § 12c-1, is entitled to compensation for total and permanent disability. The difference between the amount due the employee for total and permanent disability and the total of the combination of payments provided for as compensation for the specific "second" injury suffered is payable out of the Second-Injury Fund. The use of the phrase, "combination of the payments" does not expressly nor by implication include payments for more than one injury. A "combination of the payments" may, and in the case of this particular statute does, relate to one injury only.

■ As we construe the statute, Bothe upon becoming totally disabled by losing a second leg was entitled to $25.00, the maximum allowable under Article 8306, § 10, for 401 weeks, which would amount to $10,025.00. From this amount would be deducted the "combination of the payments" for the "second injury"—that is, 200 weekly payments of $25.00 each, or $5,000.00, Article 8306, § 12. The difference between $10,025.00 and $5,000.00, amounting to $5,025.00, is payable out of the Second-Injury Fund. As a lump sum payment, instead of weekly payments, was awarded in this case, that portion of the award which had not accrued prior to judgment (120 weekly installments of $25.00 each) is properly subject to discount.

The trial court did not compute the amount of the award in accordance with the formula above set out. Bothe was improperly charged with the $100.00 which he received in settlement of his claim for the loss of his right leg. The sum of $10,025.-00 is the total of 401 weekly payments of $25.00 each, and not the amount of a lump sum settlement for total and permanent disability. It is not proper to compute total and permanent disability on a weekly basis and the amount payable for the second injury upon a compromise or lump sum basis

in arriving at the balance due from the statutory fund. To the extent indicated, appellant's fourth point, challenging the correctness of the amount of the award, is sustained and the judgment will be modified accordingly.

■ We believe our construction of the statute and holding that compensation for a prior injury is not to be considered in determining the amount payable out of the Second-Injury Fund, not only is supported by the wording of the statute, but is supported by the history of and experience with Workmen's Compensation Acts in this country. If it be considered that the meaning of a statute is not clear, it is permissible to consider the evil sought to be remedied and the causes which induced its enactment. 50 Am.Jur. 291, § 305.

As indicated by the emergency clause of the enactment now under consideration, public interest in the plight of the physically handicapped worker has increased with the proportions of the problem since the last World War. We believe the basic conditions and considerations of the problem were well stated by Mr. Edward L. Keenan, Deputy Director of the Bureau of Employment Security, U. S. Department of Labor, as follows:

"The veteran out of a hospital after long years of rehabilitation * * * wants a job today.

"The polio victim out of bed and into braces or crutches with a twisted limb but an intact mind is anxious to be about his business of working in a new situation. * * *

"The men you read about every day who are injured in accidents eventually get back to the streets of their towns and villages. They may be changed a bit physically, but nothing has changed their fierce determination to prove themselves on the job in spite of their disability.

"Then, there are the young men and women who have been crippled these long years. * * *

"America cannot afford to be complacent about its war wounded, its sickness and accident victims and its crippled children grown to manhood. If such a time came,

America wouldn't be the land of the free and the home of the brave. It would be the land of the tin cup and the home of the slave. It would be peopled by countless men and women of working age who would have been enslaved by a philosophy that they were unimportant."

Prior to the second world war the problem of the handicapped worker was recognized and admittedly in Texas no satisfactory scheme of compensation for an employee totally and permanently disabled by a second injury had been devised. Article 8306, § 12c, as it existed prior to the Second-Injury Fund amendment of 1947, provided that in case of subsequent injuries the insurance carrier would be liable only for the compensation which would be payable had the employee suffered no previous injury. This provision placed the previously injured employee at a serious disadvantage. If he had lost a leg, the loss of the remaining leg would permanently disable him, yet he could not be compensated for permanent and total disability. The restricting provisions of Article 8306, § 12c, were made a part of the Texas Workmen's Compensation Law to avoid an even greater hardship to the handicapped person. In Gilmore v. Lumbermen's Reciprocal Ass'n, 292 S.W. 204, 206, the Commission of Appeals said: "On first impression it would seem that statutes similar to the particular article under consideration would work a great injustice upon those who have been so unfortunate as to lose an eye or a limb, but upon more mature consideration we can see what we consider to be good reasons for the enactment of such laws. If two men should apply to an industrial concern for employment, one of them having two eyes and the other only one, and the employer knew that if the man with two eyes lost one eye during the employment that he would be entitled to $1,500 compensation, and if the man with one eye lost it he would be entitled to $6,000 compensation, the employer, having to pay a higher rate of insurance because of the additional hazards for the man with one eye, other things being equal, would, if he conducted his business on sensible business methods, give employment to the man with two

eyes; and after a careful investigation of the legislation on, and judicial interpretation of the question, we have reached the conclusion that the Texas statute under discussion and similar statutes in other states were enacted for the benefit of persons as a class who enter employment with permanent partial disability rather than to their detriment."

In the opinion of the Supreme Court of the United States in Lawson v. Suwanee Fruit & Steamship Co., 336 U.S. 198, 69 S. Ct. 503, 505, 93 L.Ed. 611, the experience of the State of Oklahoma is referred to. It is stated in the opinion that: "Perhaps the most impressive evidence of the force behind these statements (that physically handicapped persons are discriminated against) is that offered by Mr. I. K. Huber of Oklahoma. Nease v. Hughes Stone Co., 114 Okl. 170, 244 P. 778, held the employer liable for total compensation for loss of the second eye. After the decision, Mr. Huber reports, 'thousands of one-eyed, one-legged, one-armed, one-handed men in the State of Oklahoma were let out and can not get employment coming under the workmen's compensation law of Oklahoma. * * * Those * * * court decisions put us in bad shape. * * * The decision displaced between seven and eight thousand men in less than 30 days in Oklahoma.'"

Prior to the 1947 amendment, Texas was operating under a law which chose the lesser of two evils. A person who had lost an arm, foot or an eye and was then permanently disabled by the loss of another member was not adequately compensated for such loss, but it was possible for such handicapped person to obtain employment and prevent his becoming a charge upon society.

The Second-Injury Fund amendment sought to correct the inadequacy of the compensation award and at the same time avoid the danger of making it difficult for a handicapped person to obtain employment. Instead of requiring the previously injured employee to carry the risk of subsequent permanent and total disability, or placing that risk upon the employer of the handicapped person (as was done in Oklahoma),

the risk of second injury, resulting in total and permanent disability was placed upon all employers carrying workmen's compensation insurance within the State of Texas. Payments into the second injury fund are made by insurance carriers upon death claims in cases where no one is entitled to a compensation award under the statute. The particular employer and his insurance carrier is not directly penalized for having afforded to a handicapped person the opportunity of engaging in a gainful occupation and making his own living.

Although the importance of the compensation award to the injured individual can not be overemphasized, it is indicated in the opinion of Lawson v. Suwanee Fruit and Steamship Company, supra, that the experience of other states with second-injury fund legislation shows that comparatively few claims against said fund are actually filed. It is indicated that the hesitancy of employers and their insurance carriers (in states placing the risk upon the particular employer) to accept the risk of a totally and permanently disabling injury to an employee with one arm, leg, or eye, may have been based upon an anticipation of numerous occurrences of a nature which, as demonstrated by experience, infrequently take place. When available, empirical data and hindsight should not be disregarded in favor of speculative deductive reasoning.

While, as a result of the recent war, cases of total disability as a result of injuries comprehended by the second-injury fund amendment will undoubtedly increase, this fact is one of the reasons the amendment was adopted, as is indicated by the emergency clause. It is generally recognized that the failure of society to make use of the services of handicapped persons is not only an injustice to the individuals involved but also constitutes an economic waste and is the mark of an inefficient social and economic organization. Where possible a legislative act should be construed to accomplish its evident and obvious purpose. We do not believe that it is the policy of the Workmen's Compensation Act to provide a maximum of 401 weeks' compensation for total and permanent disability and then charge against such sum compensation payments theretofore received for injuries occurring prior to the time of the totally disabling injury.

In our opinion, neither the compensation provided for nor the compensation actually paid for a prior injury is to be considered in determining the amount due an injured employee out of the Second-Injury Fund. If his injury be one that comes within the provisions of Article 8306, § 12c-1, the insurance carrier of his employer is liable for payments due as compensation for the loss of one hand, one arm, one foot, one leg or one eye, and the Second-Injury Fund is liable for the difference between this sum and the total of the payments which would be due for total and permanent disability. It is obviously immaterial whether the prior injury be compensable under the Workmen's Compensation Act or not. This is clearly indicated by the emergency clause of the amendment.

Our construction of the Second-Injury Fund amendment is, we believe, supported by the cited case of Lawson v. Suwanee Fruit & Steamship Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611, affirming the judgment of the Circuit Court of Appeals for the Fifth Circuit, 166 F.2d 13.

The judgment of the trial court will be reformed so as to award to appellee the sum of $4,925.20, the amount to which he is entitled under the holdings above set out, together with interest thereon from August 22, 1949, until paid at the rate of six per cent per annum. As reformed, the judgment will be affirmed.

Reformed and affirmed.