salary earned up to the time of discharge and damages for the loss of the balance of his contract. · Plaintiff, who had originally been employed by defendant, was afterwards transferred to a company known as the Nitrate Agencies, Limited, doing business in South America, which company represented, as agent, the defendant in certain parts of South America, and defendant acted as its agents in New York. After remaining in the employ of this company at Inquigue, Chile, for some time, plaintiff became sick and gave up his position and came back to New York, and after recovering went to defendant's office to see if he could get re-employment in South America. Defendant cabled the Nitrate Agencies Company, asking if they should send him back, and asking, if so, on what terms, and received an affirmative answer, naming the amount of salary. This was communicated to plaintiff, and thereupon he says he had a conversation with the president of defendant, at which time he says he was employed.

The crucial question, so far as this case is concerned, is whether the employment was by defendant or by the Nitrate Agencies Company. Plaintiff contends it was by defendant. Defendant, on the other hand, claims it was only an agent, and that plaintiff knew he was engaged by the Nitrate Agencies. Plaintiff does not claim that in his conversation with Mr. Grace the precise question was specifically discussed as to who the employer was. He says Mr. Grace told him "he had received a reply from Garnay," Garnay it is shown, was the Secretary of the Nitrate Agencies, and that "I was to go down to South America, as soon as possible." The conversation as testified to by plaintiff is not inconsistent with defendant's contention. It is not disputed that plaintiff knew of the cables; that therefore his employment and salary were fixed thereby. It was only after receipt of these cables that he had his talk with Mr. Grace, and Mr. Grace's statement above quoted plainly indicated he was acting for the Nitrate Agencies. Plaintiff also signed a receipt for an advance on account, in which it is expressly stated that it is for account of the Nitrate Agencies. The only possible conclusion from the evidence is that it was understood by both parties that he was being re-employed by his former employer, the Nitrate Agencies Company, and that defendant acted in the matter only as an agent for and after communicating with the principal by cable.

Judgment reversed, with costs, and complaint dismissed, with costs. All concur.

---

SCHWAB v. EMPORIUM FORESTRY CO. et al. (No. 106/88.)

(Supreme Court, Appellate Division, Third Department. May 5, 1915.)

MASTER AND SERVANT ⟳250¾, New, vol. 16 Key-No. Series—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—"TOTAL DISABILITY."

A workman, who had previously lost one hand, and who lost the other as the result of an accident in his employment, is entitled to compensation for "total disability" under Workmen's Compensation Law (Consol. Laws, c. 67) § 15, subd. 1, which provides that loss of both hands shall constitute total disability in the absence of proof to the contrary, and is not limited to the compensation for partial disability under subdivision 3

---

⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of that section, which enumerates loss of one hand as a partial disability, since his compensation is fixed on the basis of the wages he was earning before his injury, which necessarily were lessened because of his maimed condition, and that construction is in harmony with the legislative intent indicated by subdivision 6 of the same section, which provides that the fact that an employé has suffered previous disability shall not preclude him from compensation for a later injury, but in determining such compensation the average weekly wage shall be the same which will reasonably represent his earning capacity at the time of his later injury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Total Disability.]

Woodward, J., dissenting.

Appeal from Workmen's Compensation Commission.

Claim of Jacob Schwab before the State Workmen's Compensation Commission against the Emporium Forestry Company, employer, and the Travelers' Insurance Company, insurer, for compensation, under the Workmen's Compensation Law. On question certified to the Appellate Division by the Commission. Question answered in the affirmative.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

E. Clyde Sherwood, of New York City, for Travelers' Ins. Co.

Egburt E. Woodbury, Atty. Gen., and Jeremiah F. Connor, of New York City (E. C. Aiken, of Albany, of counsel), for Compensation Com'rs.

SMITH, P. J. The claimant was injured on July 6, 1914, by having his right hand severed at the wrist. His left hand was amputated in the year 1892. The question certified is whether the claimant is entitled to compensation for permanent total disability under subdivision 1 of section 15, or for compensation as for the loss of one hand under subdivision 3 of said section.

If a man has two hands, he is presumably a more efficient worker and can receive higher wages than if crippled by the loss of one hand. The method of payment of compensation for the loss of one hand is to allow the salary which the injured party was earning for 244 weeks. If the injured party had two hands and were earning $20 a week, if he lost one hand he would recover $4,880. Another workman having lost one hand before entering the employment would be receiving, say, $10 a week for less efficient service. If that workman lost the second hand in the service, if the claim of the insurance carrier is right, he would recover for 244 weeks at $10 a week, or $2,440. So that for the loss of the second hand, which had its double value on account of the previous loss of the first hand, under this system he would be entitled to recover only half as much as for the loss of the first hand. This anomalous result would indicate that the Legislature could not so have intended. By subdivision 1 of section 15, the loss of both hands shall presumably constitute total disability. As compensation for that total disability, he is to receive 66⅔ per cent. of the average weekly wages that he is then earning. As the man with one hand is presumably earn-

ing less wages than a man with two hands, to allow for the loss of the second hand as a permanent disability, a percentage of the weekly wage that he was then earning would be in complete harmony with compensation to one who had lost both hands by the accident, who receives his 66⅔ per cent. upon the greater wages that he was earning at the time of the accident.

Moreover, this reasoning accords with the rule which seems to be laid down in subdivision 6 of section 15, which provides that the fact that an employé has suffered previous disability shall not preclude him from compensation for a later injury, "but in determining compensation for the later injury, or both, his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury." Cases are cited upon the Attorney General's brief which indirectly lend support to his contention that the claimant has the right to recover as for a permanent disability. But the decision may well rest upon the logic of the situation, in view of the fact that the amount of compensation depends upon the weekly wage, and the weekly wage is influenced by his crippled condition at the time of the accident.

In answer to the question certified, we decide that claimant is entitled to recover as for total disability.

Question certified answered in the affirmative. All concur (KELLOGG, J., in result in memorandum), except WOODWARD, J., dissenting.

JOHN M. KELLOGG, J. (concurring in result). The claimant had his left hand amputated in 1892. On July 6, 1914, he lost his right hand, for which he asks compensation. The only question is whether his case comes within subdivision 1 of section 15 of the Workmen's Compensation Law, which provides for total permanent disability, or subdivision 3 of that section, which provides for permanent partial disability.

Subdivision 1 provides the compensation for total permanent disability, and then provides:

"Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts."

Subdivision 3, entitled "Permanent Partial Disability," provides compensation "in case of disability partial in character but permanent in quality." Among the disabilities there enumerated is found the loss of a hand. Subdivision 6 of the section is entitled "Previous Disability," and provides that the fact that an employé has suffered previous disability shall not preclude him from compensation for the later injury, nor preclude compensation for death resulting therefrom, but that in determining compensation for the later injury or death his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury.

We have seen that subdivision 1, after enumerating certain disabilities, continues: "In all other cases permanent total disability shall be

determined in accordance with the facts." Therefore there may be total permanent disabilities other than those specifically mentioned. The commission has found that the loss of claimant's hand was a permanent total disability, and such would naturally be the result. Subdivision 3 does not provide for the loss of a hand where it results in total disability, but only applies to such loss where the resulting disability is partial in character but permanent in quality.

The claimant, by the accident, has lost all the ability he had of earning a living. The disability is therefore total. His wages were evidently based upon the fact that he was previously partially disabled, and therefore the compensation to be awarded to him will be based upon such wages.

Within the clear reading and spirit of the statute, it is purely a question of fact whether by the accident the claimant was rendered totally permanently disabled, and the commission has found the facts in his favor. He is therefore entitled to compensation for a total permanent disability.