In the Matter of the Claim of Leonard Engle, Appellant, against Niagara Mohawk Power Corporation et al., Respondents. Workmen's Compensation Board, Respondent.

Third Department, December 10, 1958.

*William J. Roberts* for appellant.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

*W. D. Coleman* for Niagara Mohawk Power Corporation and another, respondents.

*Per Curiam.* Claimant suffered six dislocations of his right shoulder between October 19, 1953, when it was dislocated playing football, and August 31, 1955, when it was dislocated while he was sitting in a chair stretching his arm. On September 21, 1955 an operation was performed to stabilize the arm.

One of the six dislocations was sustained while claimant was working on November 8, 1954, when in dismounting from a crane he lost his balance and grabbed hold of a portion of the crane. All other five dislocations were nonindustrial, including two which occurred after the incident of November 8, 1954.

The Workmen's Compensation Board has found that " As a result " of the accident of November 8, 1954 " and the five nonindustrial accidents " claimant " had to undergo surgical repair " with consequent temporary disability. The board's decision was to charge one sixth of the surgical disability and one sixth of medical expenses to the employer and carrier. The claimant appeals.

The ultimate test of industrial responsibility is to pay compensation awarded for disability " arising out of and in the course of the employment " (Workmen's Compensation Law, § 10). Although there are many cases where a finding has been made that the industrial accident added to an existing physical infirmity is to be charged with the full consequences (e.g. *Matter of Schwab* v. *Emporium Forestry Co.,* 167 App. Div. 614, affd. 216 N. Y. 712), decision will often depend on the actual part which the industrial injury plays in the result under consideration.

The *Schwab* case involved a lost hand claim where the claimant had already lost a hand, and permanent total disability was awarded. That decision aroused some fear of general loss of employment of persons suffering existing physical disability and led to the enactment in 1915 (L. 1915, ch. 615) of an amendment to the statute (now embodied in Workmen's Compensation Law, § 15, subd. 7) which provides that a person suffering from " a previous disability " injured in an industrial accident shall not receive compensation in excess of the compensation allowed for the industrial injury " considered by itself ".

Since only that portion of a physical result due to injury arising from employment is to be charged with an award; and since the board may not award compensation " in excess of "

the results of industrial accident, if there is " previous disability " (§ 15, subd. 7), the power of the board to differentiate factors of causation where the record warrants differentiation and apportionment seems implicit in its general authority to decide facts.

The power to apportion differing physical causation upon a record which will warrant apportionment may be seen in cases where responsibility of two or more employers or carriers for successive injuries is in question. (*Matter of Anderson* v. *Babcock & Wilcox Co.*, 256 N. Y. 146; *Matter of Fichtner* v. *Bloomingdale Bros.*, 4 A D 2d 897, affd. 4 N Y 2d 914; *Matter of Conklin* v. *Arden Farms Dairy Co.*, 2 A D 2d 910, affd. 3 N Y 2d 860.)

In *Matter of Schurick* v. *Bayer Co.* (272 N. Y. 217) it was held that the " previous disability " provision of subdivision 7 of section 15 did not require or allow the board to attribute only 50% of the results of a disability to an industrial accident under the facts of that case. The decision was based on the record there before the court; and it is not a holding that where there is an actual and clearly established separable causation, some of which is attributable to the industrial accident and some not attributable to it, the whole result must nevertheless invariably be charged to the industrial accident.

In *Matter of Schurick* the claimant had sustained a nonindustrial fracture of a bone of his arm. Five months later after this fracture had healed sufficiently for him to return to work, he suffered in an industrial accident a fracture at the same site and an additional fracture of another bone of the arm.

It was held both that the " previous disability " referred to in subdivision 7 must be of a kind " substantially as certain and as capable of ascertainment " as the disabilities described in subdivision 8 and that it was doubtful if any existing " disability " at all had been shown in that record at the time of the industrial accident in view of the healed condition of the earlier fracture which permitted the claimant to work; and that even if a disability had been assumed, the extent of its contribution to the later injury was deemed " too speculative for practical purposes " (p. 220).

This is not a holding that if the extent of contribution of a previous disability is ascertainable, and the disability itself is as certain and capable of ascertainment as the loss of a bodily member, that the statute would not require apportionment. Entirely aside from the statutory prohibition of subdivision 7 of section 15 against attribution of compensation " in excess " of the

result of the industrial accident, it is clear that the general policy of the law does not require or permit the industrial accident to be charged more than its contribution to the resulting physical injury if that causation is factually separable in the record and found by the board to be separable.

The statute does not demonstrate a public policy to charge more to industry in the way of resulting disability than may be found fairly to have been due to industrial accident. For example, where the physical results of an industrial accident contributed to a later accident, but " only remotely " and not " primarily " the results of the later accident were held not to have arisen out of the employment. (*Matter of Sullivan* v. *B & A Constr.*, 307 N. Y. 161, 164.)

The problem in the case before us is, therefore, whether there is a substantial record on which the definite one-sixth part of the ultimate surgery of claimant's shoulder may be attributed and apportioned to the industrial accident of November 8, 1954. We find there is substantial evidence in the record which sustains the apportionment.

The surgeon who operated on the claimant to stabilize the shoulder testified that in his opinion the original dislocation playing football in October, 1953 was the " basic " cause of the need for surgery. This football dislocation was, he testified, the " primary disturbance of the normal position of these tissues which started them on their trend of recurrences afterward." The condition for which claimant was operated was a " recurrent dislocating shoulder ". It is " a definite entity which we see frequently ".

The accident of November 8 " constituted a proportional aggravation of any subsequent condition in that shoulder." The condition seen and corrected surgically " was probably the result of the summation of these various dislocations." Although elsewhere in his testimony the surgeon refused to be pinned down to exact percentages, the board had enough before it to make a " proportional " allocation. It was the fact claimant " had so many dislocations " that was, according to his surgeon, the main indication for surgery " rather than that one became a bad and extremely aggravating factor ".

There is thus substantial evidence to support the factual finding of the board both that the nonindustrial accidents and the industrial accident, all altogether, led to the need for surgery, and that the industrial accident " contributed proportionally (one-sixth) to " that need.

The decision and award should be affirmed, without costs.

HERLIHY, J. (dissenting.). I vote to affirm the finding of the board that this is a compensable claim and the only issue is the finding by the board " that it [employer] should be held only 1/6th liable for all medical expenses and disability ".

The facts are set forth in the majority opinion.

The cases are abundant of apportionment among carriers as the result of industrial accidents and of liability peculiar to special statutes. Such is not the situation here where the employer accepted claimant as he found him. Here claimant had a history of prior shoulder injury known to the employer but not associated with any industrial accident and, therefore, not compensable under the Workmen's Compensation Act. He worked for the employer from July, without incident, until November, 1954 when the nature of the accident caused the dislocation. On January 21, 1955, he left the employment of the employer through no fault of his own.

To carry out the theory of the board in this case would change the spirit and intent of the Compensation Law. Section 10 provides in part " Every employer * * * shall * * * secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment ".

In *Matter of Schurick* v. *Bayer* (272 N. Y. 217) decided in 1936, the claimant, while in the employment of the employer, suffered a nonemployment accident in the nature of a fracture of the arm. After recovering from the injury he was certified to return to his work and about two months thereafter in the course of his employment he broke the arm at the site of the old fracture and an additional fracture. He was allowed full compensation as against the employer but thereafter the board found that the fracture in May was due " as a consequence of the first injury " and modified the award by charging one half against the employer. This court sustained the finding under subdivision 7 of section 15 of the Workmen's Compensation Law but the Court of Appeals found that such a proviso was not applicable, that the situation was governed by section 10 and reinstated the original award for full compensation.

*Matter of Schwab* v. *Emporium Forestry Co.* (167 App. Div. 614, affd. 216 N. Y. 712), cited in the majority opinion, is not applicable it having been decided in accordance with subdivision 1 of section 15, except that the claimant was allowed full compensation without knowing the cause of the original injury. Likewise *Matter of Sullivan* v. *B & A Construction Co.* (307 N. Y. 161) is not applicable to the facts herein.

These cases substantiate the viewpoint that there is no statutory authority for the procedure herein and facts must be sustained either by statute or judicial decision of which there is none.

A later case, *Matter of Mastrodonato* v. *Pfaudler Co.* (307 N. Y. 592) while dealing primarily with the interpretation of section 15, was governed by the basic fact that the claimant had received a war injury, thereafter a compensable injury, and was paid full disability without any apportionment.

To sustain the ruling of the board in this case would be in conflict with the general principle enunciated in the heart cases.

In *Matter of Masse* v. *Robinson Co.* (301 N. Y. 34) at page 37 the court said: " A heart injury such as coronary occlusion or thrombosis when brought on by overexertion or strain in the course of daily work is compensable, though a pre-existing pathology may have been a contributing factor ".

*Matter of Meszaros* v. *Goldman* (307 N. Y. 296) involved the statutory construction of subdivisions 5 and 6 of section 15 of the Workmen's Compensation Law, but part of the dissenting opinion of VAN VOORHIS, J., sustained the contention of the appellant here. At page 303 Judge VAN VOORHIS said: " The mere circumstance that the accident which is the precipitating cause of claimant's temporary partial disability would not have had this effect unless claimant had previously had a weak back, is not regarded by the courts as a ground on which to defeat or reduce the amount awarded against an employer ".

This court said in *Matter of Miller* v. *Workmen's Compensation Bd.* (284 App. Div. 1071, 1072): " The fact that the work would probably not have caused a disability were it not for the original noncompensable injury is not a bar to an award for the full consequences. The employer takes the employee as he finds him, and, if a pre-existing condition renders the subsequent disability greater, an award for the full disability may be sustained."

While the record in this case is not particularly convincing as to medical proof, the board having made a finding that " The injuries sustained by Leonard J. Engle on November 8, 1954, were accidental injuries and arose out of and in the course of his employment " was in error in thereafter restricting the amount of the award to one sixth.

In the most favorable circumstances, the carrier would be liable to at least 25% of the total award. Following the industrial accident, the doctor for the claimant advised surgical repair but the insurance carrier requested conservative treatment. If

the recommendation of the doctor had been followed, the likelihood of the two subsequent dislocations would have been remote and the claimant should not be penalized under these circumstances to the benefit of the carrier.

The award as to apportionment was sheer speculation. The decision of the board should be reversed and new findings made not inconsistent with the views expressed herein.

FOSTER, P. J., BERGAN and GIBSON, JJ., concur in *Per Curiam* opinion; HERLIHY, J., dissents in a memorandum, in which REYNOLDS, J., concurs.

Decision and award affirmed, without costs.